THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* ROBERT MAY, Appellant.

First Department, January 28, 1960.

*Natalie B. Steinbock* for appellant.

*Walter E. Dillon* of counsel (*Daniel V. Sullivan*, District Attorney), for respondent.

BERGAN, J. In a melee which began as a street argument and a fist-fight on Prospect Avenue in The Bronx, George Marshall was stabbed by Samuel Montgomery and died within a short time. Appellant Robert May, who was present and took part in the fist-fight, has been convicted of murder, second degree, on the legal theory that he was a principal in commission of the murder.

To attach responsibility for murder second degree to appellant for the killing of Marshall, it would be necessary for the People to establish that May knew in advance that in such a fist-fight as this Montgomery would use his knife to kill; or that he knew in the course of the fist-fight that Montgomery was in the act of using the weapon to kill and when this knowledge came home to him, he chose to continue in the fight rather than get out of it.

Accepting that version of the facts shown by the record which best supports the People's case, it will be seen that both Montgomery and appellant May carried knives on the night of the homicide and that on the same evening, and shortly before the crime, they had a conversation with a third person, Russell Corley, about circumstances in which they would use the weapons. Corley and May were 17 years old; Montgomery, 16.

According to admissions later made to a detective concerning this conversation, May said: " If anybody bothers me or gives me any trouble I am going to give it to them " and Montgomery said that he would give it to them too; they both said that if anyone molested them " they will get hurt ".

On " coming down the block " toward the scene of the crime May told his companions that " somebody was going to get it if they mess with me tonight ". In a stenographically recorded statement to the District Attorney he said he meant by that " if somebody put their hands on me, if anybody say anything, or hit me I would use that knife "; and that Montgomery said " the same thing "; but May, asked to be more specific, did not remember just what Montgomery did say.

The essential facts leading to the actual crime were that Montgomery, Corley and May were together on Prospect Avenue when they saw Marshall and Richard Vaughn, who were boys about the same age. Vaughn testified that Corley asked him a question as to where he lived, and the answer being apparently unsatisfactory, Corley struck Vaughn.

Vaughn saw Montgomery take a knife out of his shirt and Vaughn ran away; as he ran, he turned and saw Marshall, Montgomery, Corley and May on the ground close together. May's statement to the police was that he punched Marshall and Marshall fell, but that the first he knew Montgomery had stabbed Marshall was not until he saw blood and then saw a knife in Montgomery's hand. Corley's statement to the police was that he had hit Vaughn and then hit Marshall when he was on the ground. Autopsy demonstrated four stab wounds to have been made in Marshall's body.

Upon the trial of the indictment charging all three assailants with murder, first degree, Montgomery and May were convicted of murder, second degree, and Corley was acquitted.

The People's trial theory of May's responsibility for Montgomery's act of homicide was that an intent to kill had been formed by defendant May acting in concert with Montgomery and Corley at the time the three assailants approached Vaughn and Marshall; that the purpose by the three defendants to use a dangerous weapon to effect death began at that point. This theory is suggested both in the opening statement of the District Attorney and in his summation on the trial.

In this court the People argue that the record justifies a finding that " the design to kill was formed at the instant of the killing " by Montgomery and that appellant May, having an " understanding " with Montgomery that they would " use their knives if anyone gave them any trouble ", saw the blood and " noticed Montgomery was striking blows with a knife in his hand " and that May neither protested nor abandoned the enterprise " until the homicide had been committed ".

Since an intent to kill is the indispensable condition of murder, to convict May of murder, second degree, the People would have the burden of showing beyond a reasonable doubt that more than an assault was intended by May when he participated in the fight even though the eventual outcome was a homicide by another of the participants.

To sustain a conviction for murder, the People must show that May intended to kill when he entered into the street fight; and that this intent was expressed by participation in the fight with the knowledge that Montgomery would use his knife to kill. The evidence does not fairly establish such an intent before the fist-fight started; or as the three assailants approached Vaughn and Marshall; nor would the record sustain a theory implicit in the People's case that May continued in the fight after he knew Montgomery was using the knife to kill.

The proof is equivocal on when May saw Montgomery use the knife and the People's proof of May's statement to the police is, as it has been noted, that he did not know Montgomery was using the knife "until I saw the blood and saw a knife."

Unless it were established he knew beforehand that in this fight Montgomery would use a knife to kill he could not be convicted of murder unless he continued in the fight with intent to kill after he had knowledge of the use of the knife for that purpose. Mere failure to stop Montgomery would not spell out a murder. And if, as the People say on appeal, the intent by Montgomery to kill was formed at the "instant" of the killing, the record does not show adequate opportunity by May thereafter to become aware of such an instantly formed purpose by Montgomery or that he acted on it toward consummating the homicide.

And the proof is insufficient to establish an intention by May to kill formed before the street fight began or just as it began. The three defendants did not know the two boys with whom they began to fight; no motivation to kill is shown. An argument on captious grounds with strangers, ripening into a fist-fight, would not be expected by all participants to burgeon out into a murder, even if the participants are armed with knives, unless some prearranged agreement to kill existed.

The acquittal of Corley and the conviction of May are inconsistent. Corley knew everything that May knew about Montgomery's possession of a knife. He, himself, initiated the fist-fight by first striking Vaughn; admitted that he continued in it by striking Marshall after he was on the ground and certainly had, in every respect, as much opportunity to see Montgomery take out his knife and stab Marshall and as much time then "to abandon the enterprise" as May had.

The difficulties in proving intent to commit a murder attributable to the main actor and binding on all conspirators in a plan to commit another crime, a robbery, for example, where one of them kills a victim, were found in practice to have been so great that they were met by a statute (Penal Law, § 1044, subd. 2), which defines as murder in the first degree an act causing the death of another while engaged in committing a felony without design to effect death.

In a nonfelony murder the concerted purpose to kill must clearly be aimed in the direction of the homicide and not some other act; and an agreement to murder must be shown to exclude other reasonable inferences. (*People* v. *Weiss,* 290 N. Y. 160, 170; see, also, *People* v. *Marendi,* 213 N. Y. 600.)

A conspiracy to kill wantonly or to stab with homicidal purpose the first stranger to be encountered on the street could bring each participant within the rule applying to criminal agreements to act in concert, and pin on each such conspirator responsibility for a resulting murder. That is not the direction taken by the People's proof in this case and to justify conviction of May for murder resulting from Montgomery's act of stabbing, it was necessary to establish that at sometime before the stabbing Montgomery and May acted in concert with an intent to kill.

The idiomatic words actually attributed to defendants in their conversations before the event, as to conditions under which knives would be used, suggest a purpose to use knives defensively under conditions of molestation; they do not indicate a common intention to use the knives aggressively to kill; nor do they show an intent to use the knives to kill in any street fight which defendants might provoke to sustain a finding of concerted homicidal purpose binding on all three defendants.

The absence of proof of a jointly entertained homicidal intent, binding on all three participants, leaves open the main gap in the case based on the attribution to May of a purposeful killing of Marshall.

We are of opinion, therefore, that the conviction for murder, second degree, is not sustained by the record; but that the record does sustain a conviction for a lesser degree of homicide (Penal Law, § 1043). This case, accordingly, is appropriate for the exercise of the power of the Appellate Division on appeal provided by subdivision 2 of section 543 of the Code of Criminal Procedure to modify the judgment to reduce the degree of crime found to a lower degree where warranted by the record.

The prescribed statutory test for the exercise of this power of modification is that the court be of opinion that " the record does not sustain the judgment with respect to the degree of the crime found but does warrant a judgment of conviction of a lesser degree of such crime, or of a misdemeanor ".

Although the proof fails to establish murder, second degree, it does, in our opinion, establish manslaughter, second degree, within the omnibus provisions of subdivision 3 of section 1052 of the Penal Law, which, by definition, is homicide without design to effect death by an act which does not constitute any of the higher degrees of homicide.

Thus, proof of an intention to kill attributable to May is inadequate, but proof that without intent to kill he participated

in a concerted act which resulted in an unjustified homicide, is sufficiently established to attribute to him the homicide within subdivision 3.

The language of subdivision 1 of section 1050 of the Penal Law defining manslaughter, first degree, renders that section inappropriate to the facts of this record. May was participating in a misdemeanor, third degree assault, in the course of which the homicide occurred; but the assault merged with the manslaughter (*People* v. *Vollmer,* 299 N. Y. 347).

Although the charge of the Judge to the jury was inadequate to have instructed the jury fully on the crucial issue of intent by May to kill, required to make out murder, second degree, and the conviction for murder could not in any event stand in view of this inadequacy, the charge did sufficiently advise the jury on the requirements of joint participation in acts resulting in unjustifiable homicide to warrant conviction for manslaughter, second degree; and the jury's verdict of guilty on the higher degree, within the frame of its instructions, necessarily embraced the lower. Thus, both on the facts established and on the charge, the conviction for manslaughter, second degree, is warranted by the record.

The power of an Appellate Division to reduce the degree of crime found and to modify a judgment accordingly is not only carefully prescribed by the statute (Code Crim. Pro., § 543, subd. 2), but has been construed by the Court of Appeals in exact consonance with its terms. It is not a power to exercise mercy which is to be found, rather, in the provisions for the reduction of punishment in the first subdivision of section 543 (*People* v. *Potskowski,* 298 N. Y. 299). It is a power which may be invoked when in sound judicial opinion the record does not sustain the higher degree but does sustain the lower one (*People* v. *Rytel,* 284 N. Y. 242).

This procedural facility which in a case appropriate to its proper use avoids the necessity of retrial, has had extensive application both in New York (*People* v. *McDermott,* 267 App. Div. 968; *People* v. *Allen,* 266 App. Div. 670; *People* v. *Heath,* 254 App. Div. 379; cf. *People* v. *O'Donnell,* 2 A D 2d 971) and in other State jurisdictions (24 C. J. S., Criminal Law, § 1946, p. 1087; see California, Penal Code, § 1181, subd. 6; *People* v. *Odle,* 37 Cal. 2d 52; *People* v. *Tubby,* 34 Cal. 2d 72; *Cunningham* v. *State,* 55 Okla. Crim. 67; *Stanley* v. *State,* 183 Ark. 1093; *Brooks* v. *State,* 141 Ark. 57).

The judgment of conviction of appellant May should be modified on the law and the facts by reducing the degree of crime of which appellant is convicted to manslaughter in the second

degree; and by imposing sentence therefor of 7½ to 15 years and as thus modified the judgment should be affirmed.

BOTEIN, P. J., BREITEL, RABIN and M. M. FRANK, JJ., concur.

Judgment unanimously modified on the law and on the facts by reducing the degree of crime of which appellant is convicted to manslaughter in the second degree; and by imposing sentence therefor of 7½ to 15 years, and, as so modified, the judgment is affirmed.