THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOHN GROSS, JR., Appellant. The People of the State of New York, Respondent, v JAMES VACCARELLA, Appellant.

Fourth Department, February 20, 1976

*Herald Price Fahringer* for John Gross, Jr., appellant.

*Joseph Conti* for James Vaccarella, appellant.

*Aldo L. Di Florio, District Attorney (Shavasp Hanesian* of counsel), for respondent.

MARSH, P.J. Defendants John Gross, Jr., and James Vaccarella appeal fron judgments of conviction following a jury verdict of guilty of conspiracy in the third degree and grand larceny in the second degree. Defendant Jesse Castricone, also convicted at the joint trial, does not appeal. Defendants were fined $150,000 upon their convictions for grand larceny, second degree and were sentenced to the Niagara County Jail for nine months upon their convictions for conspiracy, third degree.

On November 12, 1971 a six-count indictment was returned against defendants, arising out of an investigation of irregu-

larities in connection with certain actions of the Town Board of the Town of Niagara relating to what came to be commonly known as the Fourth Avenue Drainage Project. The first count charged the defendants with the crime of conspiracy in the third degree and named one George W. Shipston as an unindicted co-conspirator. The second count charged defendants with grand larceny in the second degree by means of false pretenses. The third count charged grand larceny in the second degree by means of false promises. The fourth, fifth and sixth counts charged the defendants with three separate instances of offering false instruments for filing in the first degree. The People sought to prove on the trial of the indictment that beginning in April, 1969 and thereafter continuously up to November, 1970 the defendants and George W. Shipston conspired to defraud the Town of Niagara by charging the town the cost of Class 5 reinforced concrete pipe for use in the Fourth Avenue Drainage Project while knowingly delivering less expensive classifications of pipe, that such defrauding was successfully completed, and in effecting such fraud the defendants completed three vouchers containing fraudulent charges which were filed with the town government.

The People's proof at trial was largely, if not totally, circumstantial. The issue of ultimate fact in such cases is whether the evidence logically points to the defendants' guilt and excludes, to a moral certainty, every other reasonable hypothesis *(People v Cleague,* 22 NY2d 363, 365-366; *People v Eckert,* 2 NY2d 126, 129; *People v Harris,* 136 NY 423, 446-447). This issue was properly and fully framed for the jury by the trial court in its charge. On appeal from such a verdict the reviewing court need not be convinced to an absolute certainty that there exists no hypothesis consistent with defendants' innocence in order to sustain the conviction thereon *(People v Regina,* 19 NY2d 65, 73-74; *People v Harris,* 306 NY 345, 351). Rather, it is enough if the circumstantial evidence is "direct, substantial and unequivocal" *(People v Regina, supra,* p 72) and the inferences of guilt to be drawn from the circumstances, as opposed to mere suspicions, are "logically compelling" *(People v Cleague, supra,* p 367).

Here the substantial evidence and the logical inferences drawn therefrom clearly meet the test with regard to the issue of the guilt of each appellant on the conspiracy count. The evidence was that appellant Gross, a plumbing contractor

in the City of Niagara Falls, accompanied Castricone, Supervisor of the Town of Niagara and appellant Vaccarella, a Councilman of the Town of Niagara, to a meeting with one Gallerani, a civil engineer employed to prepare a study of the project area; that at that meeting and in the presence of all of the parties, Gallerani was told that the town had pipe of a certain classification available and they would let him know exactly what class they had; that the town in fact had no stock of reinforced concrete pipe whatever and had never used reinforced concrete pipe of the size required; that a note on a plumbing supply concern's note paper with Gross' initials was later delivered to Gallerani; that that note specified Class 5 reinforced concrete pipe; that on the same day Gross called Gallerani to ask if he had received the note; that Gallerani typed a letter to the Town Board specifying the class of pipe referred to in the note; that Gallerani did so at defendants' request; that Gross and Vaccarella picked up the letter; that Gross contacted Shipston, vice-president of Tiger Supply Company and suggested that as a distributor for Price Brothers Concrete Company he could furnish concrete pipe if Shipston wished to bid on the Fourth Avenue Drainage Project; that Shipston bid on Class 5 pipe as set forth in the town's specifications at the price given him by Gross from the Price Brothers' price list and was awarded the contract; that Shipston did not see or handle the pipe at all but was billed by Gross for Class 5 pipe upon his representation of deliveries made to the town and Shipston in turn billed the town for the same class pipe; that Gross purchased Class 2 pipe to fulfill his order for Shipston, telling the manufacturer-distributor's representative that he wanted the least expensive pipe that would do the job; that Gross' employee Klejdys was present at the site of the project when most of the pipe was delivered and Klejdys signed the delivery receipts for much of it; that a Gross-backed company, John J. Janik, contractor, financed largely by Gross, whose business affairs Gross handled and to whom Gross rented a substantial amount of equipment, was hired on a cost-plus basis to install the pipe after being contacted by the Town Highway Superintendent, since deceased, even though his company had never undertaken a similar contract and did not have the proper equipment to do the job; that no one representing the town receipted for or approved the pipe delivered, and that the town was charged $38,198.41 above the market value for the pipe actually delivered as against the higher grade price contracted for.

With respect to each defendant there is direct and substantial evidence of circumstances from which, taken as a whole, the jury could draw logically compelling inferences that with intent to defraud the town of money in excess of $1,500 the defendants agreed with one another to perpetrate the fraud charged, and in furtherance of the scheme they committed at least one of the overt acts alleged in the indictment *(People v Connolly,* 253 NY 330, 339). This is all that is required to support the conviction.

Defendants assert that the verdict as against each must fall because no agreement to commit conspiracy was proven by the evidence. We disagree. It is true that there is no direct evidence of a meeting at which the defendants mapped out a detailed strategy to defraud the town. However, defendants' involvement beginning with their procuring Gallerani to recommend Class 5 pipe on the pretext that such pipe was available to the town when the town had no stock of reinforced concrete pipe and had never used pipe of the size required, together with their subsequent affirmative actions to insure that Gallerani's manipulated recommendation would become incorporated in the bidding specifications and the various operations that followed exclude to a moral certainty any hypothesis except that both were involved in the scheme to defraud the town.

The court properly instructed the jury that the acts and statements of one defendant could not be considered as evidence against the others unless they found that such acts and statements were made in a furtherance of a conspiracy established beyond a reasonable doubt.

Defendants argue that the convictions of grand larceny are invalid because the People failed to prove that the "market value" differential in the classes of pipe exceeded $1,500 (Penal Law, § 155.35). In establishing the "market value" differential the People relied on the price list of Price Brothers, the actual manufacturer-distributor of the pipe. Price lists have long been recognized in New York as evidence of value, given a proper foundation *(People v Alicea,* 25 NY2d 685, 687; *Whelan v Lynch,* 60 NY 469, 474). That foundation consists in establishing that the prices contained in the list are the prices that were used in the regular course of business at the time and place that the larceny occurred *(People v Irrizari,* 5 NY2d 142, 147; *People v Daghita,* 276 App Div 20, 23, mod on other grounds 301 NY 223, rearg den 301 NY 744; Penal Law,

§ 155.20, subd 1). Here that foundation was provided when Keller, Price Brothers' salesman, testified that the list reflected the price charged by Price Brothers in May, 1969 and that he used the Class 2 price shown on the list in computing how much to bill Gross and submitted to Gross the higher Class 5 price then shown on the list. Clearly, there was competent and relevant evidence from which the jury could determine that property in excess of $1,500 was stolen.

As to the substantive weight of the evidence on the larceny charge, defendants attack it on basically the same grounds that they attack the evidence of conspiracy. For the same reasons outlined in connection with the conspiracy charge these grounds, where they do not involve an outright erroneous characterization of the evidence, are of little merit. The verdict of guilty on the larceny count as to both defendants-appellants is amply supported by the evidence.

As to a later adjustment of the amount due under the contract in the amount of $5,659.35 credited to the town, this occurred only after the discrepancies were brought to light and it was based on incomplete and erroneous information on the part of the town's negotiator as to the classification of the majority of pipe actually delivered. Moreover, the town's negotiator had no knowledge of the events that preceded the awarding of the contract or the effectuated plan to furnish the least expensive pipe that would do the job. There is no way that the evidence taken as a whole can be characterized as consistent with a hypothesis of mere innocent overcharging (cf. *People v Yonkers Contr. Co.,* 17 NY2d 322).

An attack by defendants on the introduction of evidence relating to evidence in connection with the Janik trenching contract is based on the premise that this evidence was irrelevant to any issue at the trial. The theory of larceny by false pretense requires that such a larceny "is not proven unless it appears that the owner of property, relying on a false representation, voluntarily gives the thief possession or title to that property" *(People v Lobel,* 298 NY 243, 255). If it is a material element of the crime that the People show reliance on a false statement of fact, it follows then that the People should be allowed to show how this reliance was obtained. Janik's testimony as to his close business association with defendant Gross, the unusual manner in which he received the trenching contract, the absence of any inspection by any town employee or representative of the town that

would reveal the type of pipe received, Klejdys' presence on the project and his signing of the delivery receipts although both Klejdys and Janik testified that Klejdys was exclusively an employee of defendant Gross, is consistent with the inference that defendants' activities sought to minimize the possibility that the town would receive information from the job site that a lower grade of pipe than that bid on was being used, that is, information that would contradict the false representation contained in the vouchers.

This inference of ensuring that the defrauded town would rely on the false representation is especially relevant in a prosecution based on circumstantial evidence, since it is the cumulative effect of the inferences of the entire circumstances surrounding the transaction which negates to a moral certainty every hypothesis of the facts consistent with innocence. Moreover, any of the Janik evidence actually showing additional crimes, involving as it did proof from which an inference of ensuring reliance could be drawn, would bring the evidence within the long recognized exception that evidence of other crimes may be introduced when it tends to establish a common scheme *(People v Buchalter,* 289 NY 181, 217-218; *People v Molineux,* 168 NY 264, 293, 305-306). It would clearly appear that the Janik evidence was relevant to material issues at the trial.

Defendants urge that a verdict of not guilty on the fourth count of the indictment is repugnant to a verdict of guilty on the second count. The second count charges grand larceny in the second degree effectuated by means of false and fraudulent representations and pretenses in that on July 3, 1969 the defendants knowingly submitted a voucher which misrepresented the pipe delivered as being of a higher grade than the pipe actually furnished. The fourth count charges defendant with offering a false instrument for filing in the first degree in that this same July 3, 1969 voucher contained fraudulent charges for the pipe actually furnished.

It is well settled that each count of an indictment is to be treated as if it were a separate indictment and that consistency of verdicts is unnecessary *(Dunn v United States,* 284 US 390, 393; *People v Pierce,* 40 AD2d 581; *People v De Lorio,* 33 AD2d 350, 353). On the other hand, if "the indictment charges two causes, each of which has identical elements, a finding of guilt on one but not the other is truly repugnant, as opposed to being merely inconsistent", and the conviction must be

overturned (People v Bullis, 30 AD2d 470, 472; see, also, People v Pastore, 46 AD2d 870; People v Pierce, supra). However, courts will not lightly strike down a verdict. If there is any rational theory to support the difference in the verdicts, the verdicts although seemingly inconsistent on the surface will be upheld (People v Pugh, 36 AD2d 845, 846, affd 29 NY2d 909, cert den 406 US 921; People v Torres, 5 AD2d 134, 136, affd 5 NY2d 804, cert den 359 US 993; People v Tucker, 47 AD2d 583; People v Pierce, supra).

Offering a false instrument for filing in the first degree contains an element not necessary to a finding of guilt under the grand larceny count of the indictment. In order to convict on the false instrument charge, the jury had to find that appellant filed the voucher "with the knowledge or belief that it will be filed with, registered or recorded in or otherwise become a part of the records of such public office" (Penal Law, § 175.35). The trial court stated such requirement in its charge. No such element is required by the statutory definition of grand larceny in the second degree, nor was such element contained in the grand larceny count of the indictment. Therefore the elements of the two crimes are not identical and defendants' argument as to repugnancy is without merit.

Defendants also attack certain statements of the District Attorney during his summation, arguing that they constituted prejudicial misconduct which deprived defendants of a fair trial. It is well settled in New York that the prosecutor in a criminal trial is held to a high standard of proper conduct and that his misconduct may so affect the defendants' right to a fair trial as to require reversal of conviction and a new trial.

While it is true that the Court of Appeals has reversed a conviction where a prosecutor made statements strikingly similar to the statements made here concerning the "invisible taxpayer" sitting at the counsel table with him (People v Fielding, 158 NY 542, 543-546), in that case the trial court approved of the remarks, thereby compounding the misconduct and intimating to the jury that the inflammatory remarks made were properly to be considered in arriving at their verdict. Here the trial court both at the time the remarks were uttered and upon its charge made clear that the remarks were improper and instructed the jury to disregard them. That the trial court was successful in dispelling any prejudicial effect which they may have had is apparent from

the obviously careful analysis the jury employed in determining the issues of fact as demonstrated by the jury's requests and communication to the court during its deliberations. We find that the comments of the District Attorney, when taken with those of the court, did not deprive defendants of a fair trial.

Defendants in attacking the propriety of the $150,000 fine imposed on them do not argue that the trial court failed to make a determination of the defendants' "gain". Rather, they argue:

(1) That there should have been a separate hearing pursuant to CPL 400.30;

(2) That the trial court's determination of "gain" under section 80.00 of the Penal Law failed to take into account defendant Gross' normal business expenses, and

(3) That the larceny count on which defendant was convicted only involved that amount of pipe contained in the July 3, 1969 voucher submitted by Tiger Supply.

The record, however, does not show that any of the defendants ever made a motion for a CPL 400.30 hearing. While defendants had a right to a CPL 400.30 hearing upon timely motion, the defendants made no such motion.

The statute (Penal Law, § 80.00) defines "gain" as "the amount of money * * * derived from the commission of the crime, less the amount of money or the value of property returned to the victim of the crime". Defendants argue that in determining the "value of property returned to victim", that is, the pipe actually delivered, the trial court should have considered not simply the cost of the pipe to Gross but the normal middleman's expenses that Gross would have had if this had been a legitimate contract. We are not dealing here with a legitimate business enterprise under which normal expenses of doing business properly might be considered but with a swindle and fraudulent scheme wherein any costs incurred by those engaged in the enterprise in furtherance of their criminal scheme cannot under any principle of law or morality be considered a legitimate business expense.

Count two charges a larceny encompassing the entire contract by its language "between April 21, 1969 and November 2, 1970". The proof was that Gross ordered and paid for 5,900-plus feet of Class 2 pipe from Price Brothers and delivered it to the town and received payment for it as Class 5, and the

trial court properly considered the "gain" from the entire contract.

In connection with the computation of the fine of $150,000 imposed on defendants, which under section 80.00 of the Penal Law could not exceed double the amount of defendants' gain from the commission of the crime, the figures cited by the trial court are arithmetically not exact but rounded off. It would appear from the three exhibits in evidence that the proper figure for "gain" is $76,842.09. As so computed the $150,000 fine is entirely lawful and proper. In view of the character of the fraud committed on the public and the degree of culpability on the part of the defendants as demonstrated in the record, we do not find the sentences imposed excessive or unreasonable, and the judgments should be affirmed.

CARDAMONE, SIMONS, MAHONEY AND GOLDMAN, JJ., concur.

Judgments unanimously affirmed.