THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CARMEN LA BRUNA, Appellant.

Fourth Department, February 16, 1979

## APPEARANCES OF COUNSEL

*Nathaniel A. Barrell (Joseph Mistrett* of counsel), for appellant.

*Edward C. Cosgrove, District Attorney (Judith Blake Manzella* of counsel), for respondent.

### OPINION OF THE COURT

MOULE, J. P.

The principal issue on this appeal from a conviction of murder in the second degree is whether the evidence offered at trial, circumstantial in nature, was sufficient to establish defendant's guilt beyond a reasonable doubt. Defendant was found guilty of aiding Gino Albini in the intentional murder of a 21-year-old Buffalo woman.

In November 1969 the victim was with Albini, defendant and others at the Ivanhoe Restaurant in Buffalo when a fight occurred during which Albini fatally injured another man. The victim witnessed the fight and was thereafter sought for questioning by police investigating the homicide. Albini had dated her on only two or three previous occasions and did not know her well. Defendant and Albini, who were friends, were concerned that she would not be able to maintain silence during the police investigation. They made several attempts to lure the victim from her home but she refused to see them, being fearful of Albini.

On the evening of June 2, 1970 defendant and Albini finally succeeded in persuading the victim to leave her home and meet with them. They drove her to a deserted area near the Buffalo Skyway Bridge, walked her into a dark field and killed her, Albini holding her by the neck while shooting her in such a way that a bullet also struck his own hand. They then left the body in the field and returned to Albini's apartment where they enlisted Patsy Purpera and John Marinola to aid defendant in disposing of the body; Albini sought treatment for the wound to his hand. The defendant led Purpera and Marinola to the field where the body lay and they wrapped it in a rug. They placed the body in an automobile, drove it to the corner of Efner and Virginia Streets in Buffalo and disposed of it in a sewer. Gino Albini was found shot to death several days later. The victim's skeletal remains were discovered in the sewer 10 months later.

The above events were described at defendant's trial by a woman with whom Albini lived at the time of the killing, and also by Purpera, Marinola and two other friends to whom defendant had told details of the killing. Defendant contends that there was no direct evidence that he shared Albini's

intent to murder their victim and that the circumstantial evidence produced did not prove his intent beyond a reasonable doubt.

■ An accessory must share the intent of the principal actor to be held liable for the crime committed by the actor (Penal Law, § 20.00; *People v La Belle,* 18 NY2d 405, 412; *People v Monaco,* 14 NY2d 43, 46). Intent may be proved by circumstantial evidence *(People v Ozarowski,* 38 NY2d 481, 489; *People v Weiss,* 290 NY 160; *People v May,* 9 AD2d 508, 512). Where the evidence is largely or wholly circumstantial, the jury must find that the evidence leads to a conclusion of guilt beyond a reasonable doubt and, in addition, that the facts proved exclude to a moral certainty every reasonable hypothesis of innocence *(People v Borrero,* 26 NY2d 430, 434-435; *People v Cleague,* 22 NY2d 363, 365-366). "In the end, the application of the test becomes 'a question whether common human experience would lead a reasonable man, putting his mind to it, to reject or accept the inferences asserted for the established facts'" *(People v Benzinger,* 36 NY2d 29, 32, quoting *People v Borrero, supra,* p 435). Absolute or metaphysical certainty is not required *(People v Eckert,* 2 NY2d 126, 129), and the circumstances should be viewed in their entirety *(People v Cathey,* 38 AD2d 976). Furthermore, where the issue is properly framed for the jury by the court in its charge, we need not be convinced to an absolute certainty that there exists no hypothesis consistent with defendant's innocence in order to sustain the conviction. "Rather, it is enough if the circumstantial evidence is 'direct, substantial and unequivocal' * * * and the inferences of guilt to be drawn from the circumstances, as opposed to mere suspicions, are 'logically compelling'" *(People v Gross,* 51 AD2d 191, 193; see *People v Regina,* 19 NY2d 65, 73-74; *People v Harris,* 306 NY 345, 351).

Defendant claims that the evidence does not exclude to a moral certainty the hypothesis that he believed Albini intended only to scare rather than to kill their victim. Since the issue is the sufficiency of the circumstantial evidence, we view the facts in the light most favorable to the People *(Noto v United States,* 367 US 290, 296-297; *People v Benzinger,* 36 NY2d 29, 32, *supra).*

■ We find, as did the jury, that the totality of the evidence permits no reasonable hypothesis except that of defendant's guilt. Defendant and Albini were close friends and both were at the Ivanhoe on the night of the fight. Both were concerned

with the victim's ability to keep quiet during the ensuing investigation, and both men attempted to lure the victim from her home which would have been unnecessary merely to scare her. They drove her to a deserted area and walked her into the field where Albini shot her. That defendant was with Albini in the field when the victim was murdered was proved directly by his subsequent admissions to two friends and by his leading the group to the body for the purpose of disposing of it. Moreover, there was evidence that before the trial defendant spoke with an uncle who assured him that the two friends to whom he had made admissions would be out of town at the time of the trial.

The rule that circumstantial evidence must logically point to the defendant's guilt and exclude to a moral certainty every other reasonable hypothesis of innocence ensures that the trier of fact use careful reasoning and not leap logical gaps in the proof or draw unwarranted conclusions based on weak probabilities (*People v Benzinger*, 36 NY2d 29, 32, *supra*). The jury found it unreasonable to believe that defendant discussed with Albini, a long-time friend, the victim's ability to keep silent, attempted with Albini to lure her from her home, accompanied Albini into the deserted field with the victim and supervised the disposal of the body without knowing Albini's intent to kill her. The conclusion that Albini intended to kill the victim and that defendant shared this intent flowed naturally from the evidence, and there was no fact inconsistent with this conclusion. The jury did not draw unreasonable inferences.

The evidence and the logical inferences drawn from it by the jury meet the test with regard to defendant's criminal intent. We have examined defendant's remaining contentions and find them to be without merit. The conviction should be affirmed.

SCHNEPP, J. (dissenting). I dissent and vote to reverse.

As the majority opinion makes clear, the ultimate question is whether the circumstantial case against the defendant is sufficient as a matter of law to support a finding that the defendant was guilty of intentional murder beyond a reasonable doubt.

The proof against the defendant consisted of testimony that in November, 1969 a fight occurred at the Ivanhoe Restaurant in Buffalo during which Gino Albini landed a blow which

resulted in the death of Thomas Trent. Elayne Stec and the defendant, a friend of Albini, were present at the Ivanhoe when the fight took place. When a police investigation of the homicide ensued, Albini and the defendant became concerned with Stec's ability to maintain silence under questioning by the police. Albini had dated her only a couple of times and did not know her well. In the late evening of June 2, 1970, Albini and defendant finally overcame Stec's fearful reluctance to leave her home and persuaded her to meet with them. She was last seen alive by her mother as she left her home on June 2, 1970 at approximately 11:30 P.M. after having received a phone call. Later that evening or early the next morning in a deserted Buffalo field near the Skyway, Albini killed Stec in the defendant's presence and shot himself in the hand at the same time. They then left the victim. Within a few hours, the defendant and three others returned to the field where the defendant located the victim's body, and with the assistance of Patsy Purpera wrapped it in a rug, and placed it in the trunk of an automobile. The group then drove to Efner Street where the body was dumped into a sewer. Viewed as it must be, in the light most favorable to the People (see *Noto v United States,* 367 US 290, 296-297; *People v Benzinger,* 36 NY2d 29, 32; *People v Cleague,* 22 NY2d 363, 366), the record establishes that an intentional murder was committed, but does not logically compel beyond a reasonable doubt the inference that the defendant possessed the specific intent to commit the crime for which he was found guilty.

The theory of the prosecution is that the largely circumstantial evidence permits the logical inference that the defendant aided Albini in the murder of Stec and shared his intent to kill. The basis for this hypothesis is that the defendant and Albini were friends, that the defendant knew of Albini's violent disposition and reputation for viciousness, that they shared a concern that Stec would provide the police with evidence against Albini in connection with the Trent homicide, that the defendant aided Albini in coaxing Stec out of her home, that he accompanied Albini to the scene of the murder, that Albini killed Stec in the defendant's presence, and that the defendant assisted in the disposal of the victim's body.

The principal source of evidence offered by the People as to defendant's role in the killing consisted of the defendant's admissions to Nelson Willette, a childhood friend. Willette

testified that the defendant told him about the Ivanhoe incident and that the defendant and Albini "were afraid how she [Ms. Stec] was going to stand up under questioning by the Homicide people; so he [defendant] said that they tried to get her out of the house * * * He [defendant] said, Gino killed her, grabbed her and shot her. At the same time he shot himself in the hand." The description of the slaying was confirmed by Robert Brocato, also a friend of the defendant, who testified that "[h]e [defendant] told me that Gino had shot a girl named Stec and in doing so he [defendant] held his hand in a motion, told me that he [Albini] had her by the neck and in doing so he shot himself". Other prosecution witnesses gave testimony of Albini's admission to the murder and the defendant's connection with the disposal of the victim's body. The jury heard no testimony from Albini who was found dead a short time after the murder of Stec.

Defendant may only be found guilty of murder in the second degree if "acting with the mental culpability required", he aided Albini in the criminal act (Penal Law, § 20.00).

"'An aider and abettor must share the intent or purpose of the principal actor, and there can be no partnership in an act where there is no community of purpose.' (1 Burdick, The Law of Crimes, § 221, p. 297.) That intent is required for one to be held liable as a principal on the basis of his having aided and abetted the perpetrator of the crime of murder was pointed out in *People v. Monaco* (14 N Y 2d 43) where [it was] said: 'In the absence of some statutory synthesis of intention which makes out any homicide to be murder, intended or not * * * whether a homicide is committed "with a design to effect" death depends on adequate proof of such a design *by each person charged.*' (14 N Y 2d 43, 46; emphasis supplied.)" *(People v La Belle,* 18 NY2d 405, 412; see, also, *People v Ozarowski,* 38 NY2d 481, 489; *People v Agron,* 10 NY2d 130, 135.) Of course, "[i]ntent, like any other element of a crime, may be proved by circumstantial evidence *(People v Agron,* 10 NY2d 130, 140; *People v Weiss,* 290 NY 160; *People v May,* 9 AD2d 508, 512; *People v Leyra,* 1 NY2d 199, 206; *People v Taddio,* 292 NY 488, 492.)" *(People v Ozarowski, supra,* p 489.) As was explained, however, in *People v Benzinger* (36 NY2d 29, 32, *supra):* "The oft-stated rule with respect to convictions based exclusively upon circumstantial evidence is that for guilt to be proven beyond a reasonable doubt the hypothesis of guilt should flow naturally from the facts proved, and be

consistent with them; and the facts proved must exclude 'to a moral certainty' every reasonable hypothesis of innocence. (E.g., *People v. Borrero,* 26 N Y 2d 430, 434-435; *People v. Cleague,* 22 N Y 2d 363, 365-366.) The reason for the current application of this rule is not that circumstantial evidence is thought to be weaker than direct evidence, since the reverse is frequently true. Rather, the rule draws attention to the fact that proof by circumstantial evidence may require careful reasoning by the trier of facts. By highlighting this aspect, the rule hopefully forecloses a danger legitimately associated with circumstantial evidence—that the trier of facts may leap logical gaps in the proof offered and draw unwarranted conclusions based on probabilities of low degree (see *People v. Cleague, supra,* at p. 367). In the end, the application of the test becomes 'a question whether common human experience would lead a reasonable man, putting his mind to it, to reject or accept the inferences asserted for the established facts.' *(People v. Borrero, supra,* at p. 435; *People v. Wachowicz,* 22 N Y 2d 369, 372.)"

Applying these well-settled principles to the evidence in this case, one may well conclude that the hypothesis of guilt flows naturally from the facts proved and is consistent with them. However, there must be more. The facts proved must exclude to a moral certainty every reasonable hypothesis of innocence. This I cannot find from the totality of the evidence. While the acts of Albini are useful in imputing to him an intent to kill, they may not be used to infer this intent to the defendant *(People v Ozarowski,* 38 NY2d 481, 490-491, *supra).* In order to uphold the defendant's conviction the court must examine his conduct to distill the element of intent. The inferential links from which an intent may be inferred relate to the fact that the defendant assisted his friend Albini in luring Ms. Stec from her home, was present when Albini killed her, and helped to dispose of her body in the sewer. All of these acts do not rule out the possibility that the defendant had no knowledge of Albini's intention to kill the girl *(People v La Belle,* 18 NY2d 405, 411-412). Nothing in the record indicates that the purpose for which Stec was lured from her home was to kill her. The evidence does not reflect that the defendant knew that Albini was armed prior to the shooting. Defendant's participation in the disposal of the victim's body does not reveal his intent at the time of the shooting *(People v La Belle, supra).* No evidence describes the conduct of the defen-

dant prior to or during the time Albini drew his gun and fired at Stec. Albini's reputation as a volatile and violent person only underscores the reasonableness of a hypothesis that Albini may have acted spontaneously when he killed Stec. In this event, the record does not permit an inference that the defendant took a purposeful part in the homicide. "No agreement to kill, no purpose to kill, no expressed intent to kill * * * can be gathered from the evidence" (People v Monaco, 14 NY2d 43, 45, supra). Yet, even assuming that Albini did premeditate his murderous acts, nothing in the record indicates that the defendant independently formed a specific intent, shared Albini's specific intent to kill, aided Albini with the specific intent of killing Stec, or previously conspired with Albini to do so.*

Furthermore, no evidence was presented indicating that the defendant had a motive for desiring the girl's death and the absence of motive evidence "in some circumstances * * * may tend to establish that the defendant did not commit the act charged or that he lacked the requisite intent" (People v Luciano, 46 NY2d 767, 769). Motive here may only be suspicioned upon the friendship between Albini and the defendant —hardly a circumstance of compelling weight.

The proof fails to negate the possibility that the defendant intended to do nothing more than scare Stec by threatening her in an isolated surrounding. "The evidence must not only be consistent with defendant's guilt, it 'must be inconsistent with his innocence' (People v. Fitzgerald, 156 N. Y. 253, 258). This it failed to be." (People v Agron, 10 NY2d 130, 140, supra.) To find the defendant guilty on this record elevates coincidence and suspicion into permissible inference, a danger, as pointed out by Judge BREITEL in People v Cleague (22 NY2d 363, 367, supra) inherent in the use of circumstantial evidence when inferential links are based on "probabilities of low grade or insufficient degree". The gaps in the proof are too substantial to permit a finding of guilt beyond a reasonable doubt.

---

* The People's case is strengthened to some extent by Robert Brocato who testified that the defendant apparently attempted to arrange the absence of John Marinola and Patsy Purpera (participants in the disposal of the victim's body) from the trial. Although they did in fact testify at the trial, defendant's activity could be construed as some evidence of his consciousness of guilt. Aside from the fact, however, that the courts have consistently acknowledged the weakness of this evidence (see People v Leyra, 1 NY2d 199; People v Bryant, 60 AD2d 810), the proof in this case seems particularly weak since these two witnesses had no personal knowledge of anything that occurred prior to Ms. Stec's death.

The circumstantial evidence on which an inference of guilt is based must be "direct, substantial and unequivocal" and be logically compelling *(People v Gross,* 51 AD2d 191, 193). The facts considered in totality do not exclude every reasonable hypothesis other than the defendant's guilt.

In my view, the People have failed to sustain their required burden of proof in establishing that the defendant intended to kill Elayne Stec.

Accordingly, I dissent and vote to reverse and dismiss the indictment.

CARDAMONE, SIMONS and WITMER, JJ., concur with MOULE, J. P.; SCHNEPP, J., dissents and votes to reverse judgment and dismiss indictment, in an opinion.

Judgment affirmed.