■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v KENNETH JONES, Appellant. — Appeal by defendant from a judgment of the Supreme Court, Queens County (Savarese, J.), rendered April 24, 1980, convicting him of robbery in the third degree and criminal possession of stolen property in the second degree, upon a jury verdict, and imposing sentence. Judgment reversed, on the law, and indictment dismissed. The case is remitted to the Supreme Court, Queens County, for the purpose of entering an order, in its discretion, pursuant to CPL 160.50. The fines, if paid, are ordered remitted. At approximately 1:30 on the afternoon of March 29, 1979, Linda Falci's pocketbook was seized from her possession as she returned to her job at the Jamaica Hospital Nursing Home after lunch. The perpetrator of this act, a juvenile named Vincent Massey, was then observed by witnesses running around the corner, where he approached a brown Oldsmobile at the curb and, as its door "flew open", entered it. The car belonged to Ruth Springer, Massey's aunt, and was driven on that day by Walter Springer, Massey's cousin, In addition, there were three passengers in that vehicle, Dominick Livingston, Wayne Bowen and appellant, Kenneth Jones. After Massey entered the automobile, it proceeded down the street. Within several minutes, it became stuck in traffic.

This enabled the police, who had been alerted to the crime, to surround the vehicle, and all five occupants of the car were arrested and taken to the 102nd Precinct. Before the matter came to trial, Vincent Massey left this State for South Carolina and did not stand trial. The other four defendants, none of whom had any prior criminal history, were jointly tried before a jury. On March 20, 1980, all were found guilty of one count of robbery in the third degree and one count of criminal possession of stolen property in the second degree. When questioned at the 102nd Precinct as to "what [had] happened" the appellant responded: "[T]hat they were driving around, when the guy downstairs [referring to Vincent Massey] said he wanted to get something; jumped out of the car and a short time later, jumped back in." At no time did the appellant ever acknowledge that he knew that Massey intended to snatch a pocketbook, that he had any interest in Massey's undertaking, or that he had in any way participated in the crime. When Ms. Falci later examined her pocketbook, which had been thrown out of the window of the car before the police stopped it, the only thing missing was $12. One of the police officers searched at least two of the suspects and neither one had $12 in his possession. Appellant Jones had $1 in his possession when he was arrested. Apparently recognizing the weakness of his case against appellant, the prosecutor, in summation, sought to justify conviction by outlining the following case against appellant and the others: "The theory of the People's case; everybody has been guessing about it. They mentioned it what I am going to tell you. I am going to tell you what it is now. The guy, Vincent Massey was a friend of these defendants, the three of them. Now about the intention. As a frien- [sic] of these defendants * * * while he was living in New York as social acquaintances they hung out together. And about two years ago, he left New York and went to South Carolina. They didn't see him until March twenty-ninth, 1979. So, they say, 'Here he is in town. We are going to do these errands for their band,' and he comes with them to do the errands. They are talking [together] at Woolworth's or the record store. What do they do? They plan. 'You drop me off at this corner. I am going to run down the street; grab a pocket book. You meet me at the other corner so that I can jump in and we can go.' That's what happened. So they go and they waited at the other corner. He snatches the pocketbook; runs to the car. They took off. They see that cars are beginning to follow them. People are chasing them. They didn't get away. They start to think-if they get rid of the pocketbook, nothing will happen. They throw the pocket book out of the window; they are taken to the one hundred and second precinct. There is no question that they are scared. They got caught. What do they do? They start talking to Detective Ivory; he starts talking to them and gives them their rights. It will be better if you tell me what happened. They said, 'Massey was with us. He jumped out of the car. He came back into the car.'" Doubtless, if the evidence supported that theory, the appellant would have been properly convicted. However, that theory is founded on speculation — it is not based upon the evidence. In order to be held liable for the crime committed by the principal actor, an accessory must share the intent of the principal actor (Penal Law, § 20.00; *People v La Belle,* 18 NY2d 405) and the People are required to establish this element beyond a reasonable doubt. In a case such as this where the evidence is wholly circumstantial the jury must find that the evidence leads to a conclusion of guilt beyond a reasonable doubt and that the facts proved exclude to a moral certainty every reasonable hypothesis of innocence. In such a case, it is enough if the inferences of guilt be drawn from the circumstances are logically compelling (*People v La Bruna,* 66 AD2d 300, 302). The evidence in this case, viewed in the light most favorable to the People, established nothing more than that appellant was a passenger,

in an automobile from which the fugitive Massey alighted in order "to get something" and into which he returned a short time later. Indeed, the record appears to indicate that the theft occurred around the corner from where the automobile was stopped and it is not clear from the record whether the vehicle's occupants were able to observe the crime scene at all. Under the circumstances, we hold that the evidence adduced, being wholly circumstantial, did not exclude to a moral certainty every other hypothesis but that of appellant's guilt and that it was insufficient as a matter of law to establish that the appellant acted with the "mental culpability required for the commission" of Massey's crimes (see Penal Law, § 20.00), i.e., that appellant shared the intent of the principal actor herein. Titone, J. P., Lazer, Brown and Niehoff, JJ., concur.