*699 OPINION OF THE COURT
Dineen A. Rivxezzo, J.
This case was tried before me and a jury. Defendant was acquitted of one count of attempted assault in the first degree and one count of assault in the second degree, and found guilty of one count of attempted assault in the first degree (Penal Law §§ 110.00, 120.10 [2]), one count of assault in the second degree (Penal Law § 120.05 [2]), and one count of assault in the third degree (Penal Law § 120.00 [1]).
The defendant now moves (1) to dismiss the count of attempted assault in the first degree, and (2) to dismiss the count of assault in the second degree, or to reduce that count to assault in the third degree. The court, as is set forth more fully below, finds that the evidence was legally sufficient to sustain all counts except the one count of attempted assault in the first degree (Penal Law §§ 110.00, 120.10 [2]). Accordingly, for the reasons which follow, the court grants the motion in part, and otherwise denies the motion.
Facts and Procedural History
The defendant was charged with acting in concert with others in assaulting two victims, Lucero Felipe and Ruby Arriaga, who were half sisters. The victims testified that on June 9, 2011, they were involved in an altercation with Irene Bailón, whom they knew to be a member of a gang known as the Wild Chícanos. Specifically, Ruby Arriaga testified that she observed Irene Bailón strike Lucero Felipe with her fists, after which Irene Bailón tripped and struck Ruby Arriaga several times in the face (trial tr at 97, 100-101, 158). After Lucero Felipe pulled Irene Bailón off of Ruby Arriaga, Irene Bailón threatened that the sisters would “regret it,” and that she would “come back.” (Trial tr at 101-102, 160.)
Within five minutes after that altercation (trial tr at 125), Irene Bailón arrived at the victims’ home, this time accompanied by a group of 9 or 10 persons (trial tr at 105), including the defendant. One of the group, a person known as “Chula,” was holding a stick. (Trial tr at 106.) The victims testified that they came downstairs from their apartment after a lady yelled for them to come down because everyone wanted to talk. (Trial tr at 63.) Both victims testified that the defendant told Irene Bailón to “go at her,” “beat the shit out of” and “get that bitch,” meaning Ruby Arriaga. (Trial tr at 107, 165, 206.) At that point, Irene Bailón tripped Ruby Arriaga, straddled her, *700 and began banging her head on the concrete pavement. Ms. Bailón then produced a razor blade or box cutter and struck her in the face under the left eye, hitting her several times. (Trial tr at 108-109.) At the same time, she was struck once in the head with a stick. (Trial tr at 109.) Ruby Arriaga did not see any weapon other than the stick and the blade held by Irene Bailón, nor did she see the assault on her sister Lucero Felipe by the defendant. (Trial tr at 121-122, 131.)
Lucero Felipe testified that she observed the same crowd appear at her apartment, and after that Irene Bailón hit Ruby Arriaga in the face with her fist. She testified that the defendant then struck her in the face, and as they fought, defendant took “a box cutter or something” from her back pocket and struck Lucero in the face, cutting her under her left eye. (Trial tr at 171.) She also observed “Martha” strike Ruby Arriaga in the head with a stick. (Trial tr at 172.)
A third sister, Lesley Moposita, also testified that she saw Irene Bailón strike Ruby Arriaga while “punching her with something” which she removed from her pocket. (Trial tr at 239.) She did not testify to seeing defendant assault Lucero Felipe, nor to seeing any objects used as weapons.
Ruby Arriaga testified that she had a cut under her left eye that was treated at the hospital with “anesthetic glue.” (Trial tr at 113.) At the time of trial, there was no visible scar. (Trial tr at 133.) Lucero Felipe testified that her left eye was similarly treated at the hospital, where the medical personnel also cut off a small part of her skin (trial tr at 176-177). On cross-examination, she stated that medical personnel wanted to use stitches, but that she refused, and that she still has a scar.
Defendant moved to dismiss the counts of attempted assault in the first degree following the People’s case pursuant to CPL 290.10, arguing that “there’s nothing in the evidence that would support that there was ever any intent to cause disfigurement.” (Trial tr at 276.) The court reserved decision. The defendant then presented two witnesses who testified that the victims were in fact the aggressors, and that neither the defendant nor Irene Bailón were gang members, armed with any dangerous instruments. Defendant testified in a similar manner, denying that she was a gang member or the initial aggressor, or that she was armed with a weapon, and describing her injured finger and broken fingernail following the fight with Lucero Felipe. At the conclusion of all of the evidence, the defendant again moved to dismiss the counts charging attempted assault in the first degree. The court again reserved decision.
*701 The court submitted six counts to the jury. The same three counts were submitted as to each victim. Thus, as to Lucero Felipe, the court submitted attempted assault in the first degree, assault in the second degree, and in the alternative, assault in the third degree. With respect to the assault against Lucero Felipe, the jury evidently did not credit the testimony that the defendant intended to disfigure the victim, or that she used a weapon, acquitting the defendant of the first two counts, and convicted the defendant only of the third count of assault in the third degree. As to Ruby Arriaga, the same three counts were submitted; the jury convicted the defendant, on a theory of acting in concert, of attempted assault in the first degree and assault in the second degree.
Arguments of the Parties
Defendant now argues that there was no evidence that the defendant knew or was aware that Irene Bailón had a weapon of any kind, or that she had knowledge of Irene Bailon’s intent to use a weapon. Thus, defendant argues, there is insufficient evidence that the defendant shared an intent “to disfigure another person seriously and permanently, or to destroy, amputate or disable permanently a member or organ of his body,” which is required to find the defendant guilty of attempted assault in the first degree under Penal Law § 120.10 (2). With respect to the conviction for assault in the second degree under Penal Law § 120.05 (2) (“With intent to cause physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument”), defendant similarly argues that there was no showing that the defendant knew that Irene Ballon was armed with a dangerous instrument, and thus, that the evidence is insufficient to find that she shared the intent to commit assault in the second degree.
The People argue that the present arguments were not preserved at trial, and thus may not be raised pursuant to CPL 330.30. They argue that defendant failed to address the separate counts of attempted assault, and made only general arguments, which were not sufficiently specific to preserve defendant’s present claim that defendant lacked knowledge that Irene Bailón possessed or intended to use a dangerous instrument. As to the merits, the People maintain that the evidence amply supports the charges in that it can be inferred that the defendant shared an intent to disfigure and cause physical injury. In this *702 regard, the People point to the fact that a large group was assembled to confront the victims; that one of those persons carried a stick; and that the defendant commanded Irene Bailón to attack Ruby Arriaga.
Discussion
Preservation
The defendant in her notice of motion moves to set aside the verdict “pursuant to articles 290 and 330.” She does not otherwise identify the basis for the present motion.
Under CPL 330.30, a defendant may move prior to sentencing to set aside or modify a guilty verdict on “[a]ny ground appearing in the record which, if raised upon an appeal from a prospective judgment of conviction, would require a reversal or modification of the judgment as a matter of law by an appellate court” (CPL 330.30 [1]; see People v Sudler, 75 AD3d 901, 904 [3d Dept 2010], Iv denied 15 NY3d 956 [2010]). A CPL 330.30 motion may be based on the alleged legal insufficiency of the evidence to support the charges for which defendant was convicted. (See CPL 330.30 [1]; see also People v Danielson, 9 NY3d 342, 348 [2007].)
However, because a CPL 330.30 motion must be based on a ground which could be raised on appeal, a trial court cannot entertain a CPL 330.30 motion on a ground which has not been preserved for appellate review by the interposition of a specific and timely objection. Unpreserved claims of error, even if directed at the sufficiency of the evidence, cannot form the basis for relief under CPL 330.30. (People v Everson, 100 NY2d 609 [2003]; People v Ahmed, 2009 NY Slip Op 31515[U] [Sup Ct, Kings County 2009, Ingram, J.] [court cannot grant CPL 330.30 based on unpreserved claims].)
This court must therefore determine on the record if the present arguments were preserved, much as an appellate court would be constrained to do on appeal. As noted above, the People contend that defendant’s arguments at trial were insufficient to preserve her present contentions. As stated in People v Hawkins (11 NY3d 484, 492 [2008]),
“To preserve for this Court’s review a challenge to the legal sufficiency of a conviction, a defendant must move for a trial order of dismissal, and the argument must be ‘specifically directed’ at the error being urged (People v Gray, 86 NY2d 10, 19 [1995]; People v Hines, 97 NY2d 56, 62 [2001]).”
*703 The same rigorous standard applies in the Appellate Division. (See People v Edwards, 81 AD3d 848 [2d Dept 2011] [argument that People did not present legally sufficient evidence that the gun was loaded with live ammunition was not preserved for appellate review because the defendant failed to move for a trial order of dismissal on the basis of that specific claim].)
As to the charge of assault in the second degree, it is clear that no argument was raised, and thus no basis exists to review the sufficiency of the jury’s finding as to that count under CPL 330.30.
As to the counts of attempted assault in the first degree, defendant specifically stated that as to both counts, there was insufficient evidence of an intent to disfigure on the part of the defendant. While it is true that defendant did not craft the argument with the same degree of nuance and specificity as is now advanced, this nevertheless is the same argument which she now advances under CPL 330.30. With respect to the attempted assault count for which she was convicted, defendant identified the specific count and specific element as to which the claim of sufficiency was raised. It is thus likely that an appellate court would hold that the present arguments were preserved, and thus may be reviewed by this court under CPL 330.30.
In the alternative, this court notes that with respect to the count of attempted assault in the first degree, the court specifically reserved decision on defendant’s motion, which was made at the close of the People’s case under CPL 290.10. CPL 290.10 (1) provides,
“Where the court has reserved decision and the jury thereafter renders a verdict of guilty, the court shall proceed to determine the motion upon such evidence as it would have been authorized to consider upon the motion had the court not reserved decision. If the court determines that such motion should have been granted upon the ground specified in paragraph (a) herein, it shall enter an order both setting aside the verdict and dismissing any count of the indictment upon such ground.” (Emphasis added.)
The statute clearly and expressly contemplates that the court may decide the motion post-verdict. As the Court observed in People v Payne (3 NY3d 266, 273 [2004]), “Where . . . the court has reserved decision, the defendant has preserved a claim of insufficiency, and the trial court would then rule on the CPL 290.10 motion as if the motion were made at the close of all the *704 evidence.” Further, in People v Payne, the Court specifically-rejected the dissent’s contention that a CPL 290.10 motion, made at the close of the People’s case, must be renewed after the People rest. Here, in any event, the motion was in fact renewed.
The People have cited no authority, and the court has found none, that requires a specific argument to be preserved, for appellate purposes, before a trial court may consider it on a CPL 290.10 motion on which the court has reserved decision. Indeed, defendant could not have anticipated the jury’s partial acquittal of the defendant, which, as is discussed below, impacts the court’s disposition of the motion on which it reserved decision. Whether or not the defendant’s counsel could have articulated his arguments more fully during trial, in order to do justice, this court will fully consider all of the cogent arguments in deciding the CPL 290.10 motions made by defendant.
Sufficiency of the Evidence of Attempted Assault in the First Degree
A verdict is legally sufficient when, viewing the facts in a light most favorable to the People, “there is a valid line of reasoning and permissible inferences from which a rational jury could have found the elements of the crime proved beyond a reasonable doubt” (People v Acosta, 80 NY2d 665, 672 [1993], quoting People v Steinberg, 79 NY2d 673, 681-682 [1992]).
In deciding the motion, the question arises whether the court must, or should, take into account the jury’s rejection of the theory that the defendant used a dangerous instrument to inflict physical injury, or intended to disfigure Lucero Felipe, as the defendant was acquitted of the counts of attempted assault in the first degree and assault in the second degree which were based on the defendant’s conduct as a principal. The jury may have found either that the defendant was not armed with a dangerous instrument, or that, while she possessed a dangerous instrument, it was not used to inflict injury. Indeed, defendant argued at trial that Lucero Felipe’s injuries were consistent with contact with defendant’s fingernail.
The court has located only one case in which the court did, in fact, consider acquitted counts in weighing the sufficiency of the evidence. In People v Yarrell (75 NY2d 828 [1990], revg for reasons stated by dissent 146 AD2d 819, 821-822, [2d Dept 1989]), defendant and his codefendant were indicted for, inter alia, the crimes of attempted murder in the first degree (two counts), criminal possession of a weapon in the second degree *705 and third degree, and reckless endangerment in the first degree, arising out of an incident in which two police officers were shot at as they approached the two defendants, who were about to enter a reportedly stolen car which had been under surveillance by the police officers. The codefendant was convicted of all charges, while defendant was convicted of two counts of attempted murder in the first degree and was acquitted of the remaining counts. The Court reasoned that as the jury acquitted the defendant of possession of a weapon, it was apparent that the defendant was convicted of attempted murder on a theory of accomplice liability, rather than upon the theory that he actually fired any shots at the police officers. The Court then considered the legal sufficiency of the evidence only on the theory that the codefendant fired the gun, and dismissed the counts of attempted murder since without evidence that defendant himself personally possessed a gun, there was no evidence that defendant was aware that the codefendant had a gun and intended to use it.
Similarly, in the present case, as the jury rejected the theory that the defendant used a dangerous instrument to inflict physical injury, or that defendant intended to disfigure Lucero Felipe, the evidence must be examined only on the theory that the defendant did not slash Lucero Felipe with a dangerous instrument.* A criminal defendant may be convicted as an accomplice, and, thereby, held responsible for the actions of a principal, if he or she possesses the mental state necessary for the commission of a crime and intentionally aids in the conduct by the principal that constitutes the offense. (Penal Law § 20.00.) New York courts have consistently held that evidence supporting a conviction on an acting-in-concert theory must establish that the defendant shared a “community of purpose” with the principal. (People v Cabey, 85 NY2d 417, 421 [1995]; People v Kaplan, 76 NY2d 140 [1990].)
*706 There was no direct evidence that the defendant knew that the codefendant was armed with a dangerous instrument. The People argued at trial that the defendant and the codefendant both slashed their respective victim with a blade. Had the jury credited this theory, it would be plausible to infer that the defendant, as an accomplice, knew that Irene Bailón also had a blade, and further, that they shared an intent to disfigure Ruby Arriaga. In other words, had the jury found that both the defendant and the codefendant used dangerous instruments to slash the victims’ faces, a permissible inference would arise that there was a shared intent between the defendant and codefendant to disfigure the victims. However, the jury rejected the theory that the defendant employed a dangerous instrument. Even if she possessed a dangerous instrument, it was not used to inflict injury. The jury apparently credited the defendant’s argument that the injury was caused by a fingernail.
Viewing the facts in light of the jury’s acquittal, the defendant assaulted Lucero Felipe with her fists, and Irene Bailón, acting on defendant’s command, attacked Ruby Arriaga, slashing her with a blade. But there is, as already noted, no direct evidence that defendant knew that Irene Bailón was armed with a dangerous instrument, and in light of the jury’s findings, there are no facts from which a rational or reasonable inference may be made that the defendant knew that Irene Bailón intended to use a dangerous instrument.
Without a showing of knowledge on the defendant’s part that Irene Bailón was armed with a dangerous instrument, there is insufficient evidence that the defendant shared an intent to “disfigure” Ruby Arriaga’s face. Without doubt, Penal Law § 120.10 (2) does not require the use of a dangerous instrument (“With intent to disfigure another person seriously and permanently, or to destroy, amputate or disable permanently a member or organ of his body, he causes such injury to such person or to a third person”). But the absence of knowledge on defendant’s part that Irene Bailón was armed with a dangerous instrument negates any inference which would have arisen if indeed the defendant knew that Irene Bailón possessed and intended to use a dangerous instrument. Defendant’s order to “get” Ruby Arriaga infers no more than a command to assault her, not to cause disfigurement. All that can be inferred from the evidence presented was that the defendant intended that Irene Bailón cause physical injury to Ruby Arriaga, not that she intended that Irene Bailón cause disfigurement. (See People v *707 Granja, 194 AD2d 626, 627 [2d Dept 1993] [reducing the defendant’s conviction of assault in the first degree to a conviction of assault in the second degree, where “(t)here was no evidence that the defendant knew that the codefendant had a baseball bat or intended to beat the victim, once the defendant knocked him to the ground”]; People v Stevens, 153 AD2d 768, 769 [3d Dept 1989] [where there was no evidence that defendant carried a weapon or was aware that the codefendant intended to use a knife, conviction of first-degree manslaughter based on accessorial liability was not supported by legally sufficient proof], affd 76 NY2d 833 [1990]; People v Monaco, 14 NY2d 43, 45-46 [1964] [defendant who joined a street fight with intent to physically beat the victim not hable under acting in concert theory for another participant’s spontaneous decision to shoot a gun]; People v May, 9 AD2d 508 [1st Dept 1960] [court refused to attribute the principal’s act of stabbing the victim during a melee to the defendant, who was merely a participant in the fistfight].)
The People maintain that the requisite intent can be inferred based on the defendant’s knowledge that one of the persons in the group carried a stick, and that Irene Bailón returned with a large group of persons. “Although there was no direct evidence of the defendant’s intent, intent may be inferred from the act itself as well as from the defendant’s conduct and the surrounding circumstances.” (People v Persaud, 25 AD3d 626, 627 [2d Dept 2006].) The presence of a stick, which was used by an unidentified person to strike only one blow during the assault, simply does not give rise to a logical inference that the defendant was aware that Irene Bailón was armed with a blade, or that defendant shared an intent to disfigure the victim. Nor did the presence of additional individuals, who took only a minimal part if any in the altercation, establish defendant’s intent.
Nor do the People argue that defendant continued to participate in the assault after Irene Bailón’s intent became clear. The assault here lasted only a few minutes, and there is no evidence, as there was in People v Allah (71 NY2d 830, 832 [1988]), that “[e]ven if his [defendant’s] assistance was not initially planned, the totality of the evidence permits only the conclusion that [defendant] knowingly participated and continued to participate even after his companion’s intentions became clear.”
Sufficiency of the Evidence of Assault in the Second Degree
As indicated above, the defendant did not move to dismiss the counts charging assault in the second degree, and thus any *708 argument as to these counts is not properly before the court. In any event, there clearly was sufficient evidence to support the jury’s finding of guilt as to that count, premised on defendant’s acts as an accomplice. Penal Law § 120.05 (2) requires legally sufficient evidence that the defendant acted with intent to cause physical injury, and that physical injury was caused by means of a dangerous instrument. “Physical injury” means “impairment of physical condition or substantial pain.” (Penal Law § 10.00 [9].) There is ample evidence that the defendant intended to inflict physical injury on Ruby Arriaga, including her statements to Irene Bailón to “beat” and “get” Ruby Arriaga. The law does not require that the defendant be aware that her accomplice was armed with a dangerous instrument, but only that they share the same intent. Lastly, there was ample evidence that in fact Irene Bailón had a blade, as testified by Ruby Arriaga and her sister Lesley Moposita.
Conclusion
The court sets aside the jury’s verdict of guilt as to attempted assault in the first degree pursuant to CPL 330.30 and 290.10.
The motion is otherwise denied.

 See also People v Rayam (94 NY2d 557, 563 n [2000]), in which the Court stated,
“In so ruling, we do not mean to imply that, under no circumstances may an intermediate appellate court consider jury acquittals in performing weight of the evidence review. Nor should our ruling here be deemed to cast in doubt the propriety of consideration of such acquittals in some instances on legal issues such as the sufficiency of the evidence (see, People v Yarrell, 75 NY2d 828, revg for reasons stated by dissent 146 AD2d 819, 821-822) or errors in the admissibility of evidence (see, People v Osorio, 75 NY2d 80).”