Burke, J.
On November 30, 1963 the body of Bose Mary Snay was found in a culvert in the Town of Schaghticoke, Bensselaer County. On December 3,1963 the appellant, Bichard M. La Belle, and his brother, Edward F. La Belle, were arrested in the City of Troy, N. Y., by the New York State Police and charged with the girl’s murder. After having submitted to a lie detector test and after a period of questioning by various members of the State Police, the defendant, Bichard La Belle, gave a statement to the police indicating that he had been with Edward and the victim on the night of her murder and had been present in Edward’s car while the latter had sexual intercourse with the girl on two occasions and was seated in the car when his brother, at this point outside of the car with the girl following the second rape, struck and killed her. This statement, while placing the defendant at the scene of the crime, also tended to exculpate him, as it recounted how he had at various points in the course of the evening attempted to intercede with Edward on the girl’s behalf and it also indicated his shock and surprise at his brother’s actions and his own fear that his brother would harm him as well if he did not keep silent and co-operate in disposing of the girl’s body.
Subsequently both brothers were jointly indicted, tried and convicted on two counts of murder in the first degree, the first charging premeditated homicide and the second felony murder (homicide as an incident to the commission of second degree rape). Edward La Belle was sentenced to death and Bichard La Belle to life imprisonment. Edward’s conviction was appealed directly to this court, where it was affirmed. (People *409 v. La Belle, 16 N Y 2d 807.) Bichará La Belle’s conviction, which is now before ns following a unanimous affirmance by the Appellate Division, Third Department, presents a number of questions which were raised and disposed of upon his brother’s appeal. In addition, however, it also presents different issues not before the court on Edward’s appeal. Chief among these are defendant’s contentions that the trial court abused its discretion in denying his pretrial motion to sever the trials of the two defendants and that the People’s evidence on the trial was insufficient to support the jury’s verdict as to him.
We are in agreement with the defendant that the trial court should have granted the motion to sever the trials and that this failure to sever so prejudiced Bichard La Belle that it amounted to an abuse of discretion warranting reversal and a new trial. We are also of the opinion that with respect to the charge of premeditated murder in the indictment the People’s proof against this defendant on the trial was insufficient to support a verdict of guilt on this count. Defendant is entitled to a new trial restricted to the felony murder count of the indictment.
While the question of whether there- should be separate trials is addressed primarily to the “practical good judgment of a trial judge ”, where the trial court’s exercise of the discretion vested in it amounts to an “ abuse of discretion ”, this court may review such lower court determinations (People v. Feolo, 282 N. Y. 276, 281; People v. Fisher, 249 N. Y. 419; see, also, Cohen and Karger, Powers of the New York Court of Appeals, chs. 16, 20, § 198, p. 745). In this case the duty of the trial court to order severance was clear even before the trial commenced, but, even if it were not so apparent before trial, we on appellate review may take a retrospective view in determining whether ‘ ‘ injustice or impairment of substantial rights unseen at the beginning” has occurred (People v. Fisher, supra, p. 427). Here, under either view, it is clear that such injustice occurred.
The People’s theory of the case is that Edward La Belle raped and killed the girl and Bichard La Belle aided and abetted his brother in the commission of these crimes (which would make him a principal under Penal Law, § 2). It is defendant’s contention that he was not a knowing aider and abettor of his brother in the murder of the girl, that, rather, he was a nonparticipating eyewitness to the killing.
*410 The only evidence offered by the People as to Richard’s exact role in the killing was his own statement. Clearly, once the trial court ruled this statement admissible, the two defendants’ positions became mutually antagonistic. If the statement was allowed to be presented to the jury m toto, Edward La Belle, against whom this statement could not be considered evidence, would surely be prejudiced. This the trial court attempted to minimize by allowing into evidence only a redacted version of the statement, with practically all the references to Edward deleted.[1] Ironically, however, in its concern to minimize the prejudice likely to result to Edward, the court seriously prejudiced Richard, the author of the statement. This resulted from the fact that the redaction not only eliminated prejudicial reference to Edward but also eliminated those portions of the statement tending to exculpate Richard. In the context of this particular statement this could not be avoided. The redacted statement thus took on an entirely different import from that found in the original statement. It also distorted the picture of the events the prosecution presented to the Grand Jury.
If there had not been a joint trial, Richard La Belle would have been entitled to have his entire statement, including the exculpatory portions, put into evidence, rather than this warped version of what he had told the State Police. (See People v. Loomis, 178 N. Y. 400, 405; People v. Miller, 247 App. Div. 489, 493; Richardson, Evidence [Prince, 9th ed.], § 346.) The trial court, which had examined the minutes of the Grand Jury, which concededly included this statement in its original form, *411 in passing npon a motion by this defendant to inspect the minutes of that proceeding, was undoubtedly aware that the People would seek to introduce Edcbard La Belle’s statement into evidence on the trial and that if it were allowed in on the trial it would have to be strictly edited to be admissible. This, of course, in this particular case would result in prejudice to Bichard. At that time the court should have had a ‘ ‘ reasonable anticipation based on the facts then disclosed” (People v. Snyder, 246 N. Y. 491, 497) that redaction of the statement sufficient to prevent harm to Edward would result in depriving Bichard of a fair trial. Under the test which we have held should be applied where jointly indicted defendants move for severance of their trials, namely, whether a separate trial will ‘ ‘ impede or assist the proper administration of justice in a particular ease and secure to the accused the right of a fair trial ” (People v. Snyder, supra, p. 497), this defendant was entitled to a severance. The injustice of allowing the People to put into evidence only those portions of his statement which incriminated him, with the exculpatory portions deleted, is manifest. The defendant’s right to a fair trial could only be protected by means of a separate trial, wherein, if the People wished to offer his statement or a part thereof against him, it would have to be offered in such form that his version of what occurred remained clear and unaltered in substance. Our holding here, it might be added, is in accord, as I have noted, with the rule announced by the California Supreme Court in People v. Aranda (407 P. 2d 265). There unless “ all parts of the extrajudicial statements implicating any co-defendants can be and are effectively deleted without prejudice to the declarant ” they are inadmissible in a joint trial. (407 P. 2d 265, 272-273; emphasis supplied.)
With respect to the count in the indictment charging this defendant with premeditated murder, we find that the People’s evidence was insufficient to support a guilty verdict. The only evidence supporting the People’s contention that this defendant was an aider and abettor in the commission of premeditated murder was circumstantial evidence, placing the defendant at the scene of the crime and even indicating that he co-operated with his brother after the killing in disposing of the body and in attempting to remove evidence of the crime, but not ruling out *412 the possibility that this defendant was without knowledge of his brother’s intention to kill the girl.
Section 2 of the Penal Law makes a principál in the crime charged any person who “ aids and abets in its commission ”. It does not, however, make one a principal merely on the basis that, in retrospect, we may say that in an objective sense this person was helpful or of use to the actual perpetrator of the crime. There is a subjective element as well. As one legal scholar has pointed out, “ An aider and abettor must share the intent or purpose of the principal actor, and there can be no partnership in an act where there is no community of purpose.” (1 Burdick, The Law of Crimes, § 221, p. 297.) That intent is required for one to be held liable as a principal on the basis of his having aided and abetted the perpetrator of the crime of murder was pointed out in People v. Monaco (14 N Y 2d 43) where this court said: “ In the absence of some statutory synthesis of intention which makes out any homicide to be murder, intended or not (such as Penal Law, § 1044, subd. 2, in respect of a person engaged in felony), whether a homicide is committed ‘ with a design to effect ’ death depends on adequate proof of such a design by each person charged.” (14 N Y 2d 43, 46; emphasis supplied.)
The People’s evidence in the case at bar does not lead exclusively to the inference that this defendant had knowledge of his brother’s intentions. We have long held that where the record of circumstantial evidence does not exclude to a “ moral certainty ” the hypothesis of a defendant’s innocence a prima facie case has not been made out. (People v. Monaco, supra; People v. Weiss, 290 N. Y. 160; People v. Woltering, 275 N. Y. 51; People v. Fitzgerald, 156 N. Y. 253.) While the prosecution is not required to produce such proof that an “ absolute or metaphysical certainty ” of the defendant’s guilt is created (People v. Harris, 306 N. Y. 345, 351), as People v. Monaco (supra) illustrates, this court continues to adhere to its traditional view of circumstantial evidence.
That this defendant heard his brother say, after they had induced the girl to join them in the car, that he was going to take her “ for a ride ”, that he knew his brother had once already forced the girl to submit to sexual intercourse when he (Richard) got into the back seat “ to make sure she didn’t get out ” of the *413 car, that he got out of the hack seat and into the front seat when his brother again wished to have intercourse with the girl, that he was present, seated in the car, when his brother killed the girl, and even that he helped his brother to remove traces of the crime, all these do not exclude the hypothesis that he was unaware before the murder of his brother’s intention to kill the girl.
While in the brother’s case the very same circumstantial evidence, coupled with his actual perpetration of the killing and a strong motive to prevent the girl’s identifying him as her assailant, was sufficient to support a finding of premeditation, in the case of Richard La Belle these other factors are not present. When Edward La Belle said he was going to take the girl “ for a ride ” he may well have had dire consequences in mind, in the light of his later conduct, hut knowledge of such consequences cannot necessarily be attributed to his listener. It might just as well have been a slang expression with no sinister overtones. Furthermore, there was no evidence presented by the People indicating that Richard La Belle had a motive for desiring the girl’s death.
The judgment of conviction should be reversed and a new trial on the felony murder count of the indictment ordered.

. The present California rule is to not allow sueh statements into evidence unless “all parts of the extrajudicial statements implicating any co-defendants can be and are effectively deleted”. (People v. Aranda, 407 P. 2d 265, 272-273.) If sueh effective deletion cannot be achieved, the California courts are required either to grant a severance, if the prosecution insists upon using the statement, or to exelude the confession when offered on the trial.
A similar rule has recently been adopted by the United States Court of Appeals for the Second Circuit in United States v. Bozza (365 F. 2d 206). Whether this states a rule different from that- announced by Chief Justice Traynor in People v. Aranda (supra) or whether it is merely a holding that in this particular ease effective deletion of the portions of the statement incriminating the eodefendants was not accomplished is not clear. It should be noted further, however, that the Federal Second Circuit Court of Appeals in Bozza (supra) based its decision on constitutional grounds.