■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RICKY BENNETT, Appellant.—Appeal by defendant from a judgment of the Supreme Court, Queens County (Groh, J.), rendered December 30, 1987, convicting him of murder in the second degree and criminal possession of a weapon in the second degree (two counts), upon a jury verdict, and imposing sentence.

Ordered that the judgment is modified, on the law, by reversing the convictions for murder in the second degree and criminal possession of a weapon in the second degree (one count; third count of the indictment), vacating the sentences imposed thereon and dismissing those counts of the indictment; as so modified, the judgment is affirmed.

At trial, the People adduced testimony from Police Officer Eurich that in response to hearing about 5 to 8 gunshots while on motor patrol late in the evening on September 9, 1986, he drove his vehicle around the corner to 170th Street, where he observed the victim lying on the ground underneath a fire escape and immediately thereafter observed four men enter a late model Pontiac. Eurich subsequently followed the

car to an empty lot a short distance away where all four occupants exited the vehicle and fled on foot. Although Eurich gave chase, he was unable to catch any of the suspects. A short while later, Police Officer Trigg apprehended the defendant as a result of hearing a radio communication broadcast by Eurich which described one of the fleeing suspects as wearing camouflage pants and either a camouflage shirt or jacket. Officer Trigg testified that as he passed 166th Street, two men in "camouflage suits" ran across the street directly in front of the police car and then over a fence into an adjacent backyard. Unable to scale the fence, the witness and his partner went around the block to 167th Street and entered the yard from that direction. There, Trigg observed a man dressed entirely in camouflage lying underneath an automobile. Officer Trigg further testified that in response to the routine admonition: "Police, don't move", the defendant immediately blurted out "that he didn't have his gun, he was only driving, he lost his gun going over the fences, that he had a .25—a black .25 caliber pistol. He was only driving and he didn't do the shooting".

Detective McNicholas testified that after the defendant was taken to the 113th Precinct, he proceeded to make a statement admitting that he worked for a man named Kassan and that on the night in question, he, Kassan and three other men went to the "American Towers" building to buy four ounces of heroin. When they arrived at that location, Kassan instructed the defendant to wait in the car while Kassan went upstairs with two of the other men, Unique and Knowledge. A short while later, the defendant observed Unique, Knowledge, and Kassan fire shots at a man who had climbed out onto a fire escape landing and who was attempting to descend the fire escape. The defendant also acknowledged that he saw the man fall to the ground. Thereafter, Kassan, Unique and Knowledge ran out of the building and into the car and the defendant drove them away from the scene of the shooting.

The People also established at trial that the two bullets recovered from the victim's body had been discharged from a .357 magnum gun which the police had discovered beneath the abandoned Pontiac.

On appeal, the defendant contends that the People failed to prove to a moral certainty either that he was an actual shooter of the victim, or that he shared the culpable intent to cause the death of the victim. We agree.

It is clear that the People failed to establish that the

defendant was one of the shooters or that he ever possessed the murder weapon. To hold the defendant criminally responsible for the conduct of the actual shooter, the People were obligated to prove beyond a reasonable doubt that the defendant acted with the mental culpability necessary to commit the crime and, in furtherance thereof, he solicited, requested, commanded, importuned or intentionally aided the principal in the commission of the crime (Penal Law § 20.00; *People v Torres,* 153 AD2d 911; *see also, People v La. Belle,* 18 NY2d 405). The People failed to meet this burden. We note in this regard that there is no merit to the People's contention that the defendant's criminal intent was established by his failure to disassociate himself from the purported actual shooter or shooters once he was aware that the fatal shooting had occurred *(see, People v La Belle, supra).* We also find that the People failed to establish that the defendant had ever possessed the murder weapon, the .357 caliber magnum. Thus, the judgment of conviction is modified accordingly.

However, viewing the evidence in the light most favorable to the People *(see, People v Contes,* 60 NY2d 620), we find that it was legally sufficient to establish the defendant's guilt of criminal possession in the second degree, based upon his spontaneous admission to Officer Trigg that he had taken a .25 caliber gun with him to the scene of the crime. Mangano, P. J., Bracken, Kunzeman and Sullivan, JJ., concur.