■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v SAMUEL HUGGINS, Appellant.—Judgment of the Supreme Court, New York County (Alfred Kleiman, J.), rendered on June 18, 1986, convicting defendant, following a jury trial, of robbery in the first degree and sentencing him, as a second violent felony offender, to an indeterminate term of imprisonment of from 6 to 12 years, is unanimously reversed on the law and the matter remanded for a new trial.

Defendant and three companions, Reginald Brown, Levon Crawford and John Bennett, were accused in two separate indictments, subsequently consolidated, of criminal possession of a weapon in the third degree, two counts of robbery in the first degree and one count of robbery in the second degree.

The basis for these charges was an incident which occurred on August 11, 1985 when the four men hailed a gypsy cab in the Bronx and directed it to 131st Street and Madison Avenue in Manhattan. After a stop, during which defendant, Brown and Crawford briefly left the taxi, the vehicle, along with its four passengers proceeded to 144th Street and Amsterdam Avenue in Manhattan where the same three men alighted. The group thereupon approached Clarence Butler, a crack dealer, and surrounded him. Defendant stood behind Butler as Brown produced a loaded and operable gun and held it against Butler while Crawford rifled Butler's pockets, removing drugs and cash. The perpetrators then walked Butler toward Amsterdam Avenue where defendant pushed him down into a little basement. The three men ran off and reentered the cab, which drove off. However, the four passengers were arrested shortly thereafter, and a gun, crack and cash were recovered, as a result of the information provided to the police by Butler, who immediately reported the robbery.

Following a combined hearing to suppress physical evidence and statements, at the conclusion of which all motions were denied, defendant, Brown, Crawford and Bennett proceeded to trial. The first witness having finished testifying, Brown and Crawford pleaded guilty to single counts of attempted robbery in the first degree. In addition, during the course of the trial, Bennett waived a jury and requested that the court enter a verdict, and he was ultimately acquitted. Thus, only defendant continued through to a verdict by the jury, which found him guilty of robbery in the first degree. He subsequently moved to vacate the judgment of conviction pursuant to CPL 440.10, claiming that Crawford, who had previously invoked his privilege against self-incrimination, was now prepared to testify on his behalf and that he had not been accorded the effective assistance of counsel. The court, after the ensuing hearing, denied the motion. On appeal, defendant urges that the Trial Judge improperly failed to instruct the jury that, as an accomplice, he could only be guilty of the degree of robbery that was compatible with his own culpable mental state and with his own accountability for the use of a weapon by a codefendant. He also asserts that he did not receive adequate legal representation and, finally, that proof of his intent to assist in the commission of the crime was so minimal that the proposed exculpatory testimony of Crawford creates a probability of acquittal.

In *People v Baldi* (54 NY2d 137, 146-147), the Court of Appeals, in discussing the issue of an accused's right to

counsel, stated: "Our most critical concern in reviewing claims of ineffective counsel is to avoid both confusing true ineffectiveness with mere losing tactics and according undue significance to retrospective analysis. It is always easy with the advantage of hindsight to point out where trial counsel went awry in strategy. But trial tactics which terminate unsuccessfully do not automatically indicate ineffectiveness. So long as the evidence, the law, and the circumstances of a particular case, viewed in totality and as of the time of the representation, reveal that the attorney provided meaningful representation, the constitutional requirement will have been met (see *People v Jackson,* 52 NY2d 1027; *People v Aiken,* 45 NY2d 394, *supra;* cf. *People v Bell,* 48 NY2d 933; *People v Droz,* 39 NY2d 457, *supra).*"

In that regard, the challenge to the competency of defendant's attorney is not limited to questioning his trial strategy. On the contrary, defendant contends, and an examination of the record herein reveals, that he was deprived of meaningful representation. Indeed, the trial court, notwithstanding its denial of defendant's motion to vacate the conviction on this ground, acknowledged that counsel failed to "display that level of professional competence it would have preferred he had." Defendant's lawyer, an elderly man who had once been disbarred for over 20 years, appeared to be suffering from alcoholism, was repeatedly tardy and demonstrated a persistently lackadaisical approach to defending his client. He had recently been hospitalized in an alcohol intoxication unit and seemed, as counsel for one of the codefendants noted, "confused and inattentive", rarely, if ever, expressing an opinion of his own or otherwise participating actively in the proceedings. In fact, there are indications that defendant's attorney was observed imbibing alcohol in the pens and was even in possession of a liquor bottle in the courtroom.

Moreover, counsel's excuses for being late were extremely flimsy, such as his assertion that he had no clean shirts, and the record is replete with examples both of counsel's indifference to defendant's interests and his perplexity concerning the legal issues involved. For instance, defendant's attorney, after "joining" in cocounsels' arguments with respect to the suppression motions, asked for dismissal "pursuant to section 201.30 of the CPL." The court reminded him that it was only entertaining applications relating to the motion to suppress. He then complained that the People had not called the complainant to testify, following which he remarked that "the hearing was erroneous as a matter of law and the identifica-

tion of the defendant has never been approached by the complainant. Each identification is made on the hearsay rule. * * * The Judge's ruling was erroneous as a matter of law, pursuant to Wade, in that the Judge makes the identification was properly because of the interlocking statement with the co-defendant. The statements shall not interlock with the actions of this defendant." Continuing to confuse separate legal concepts, he declared that:

"There has never been identification to the point that the defendant was an active participant in the crime. The fact that the defendant is induced—is involved at all of any standing is the immediate area does not fullfil [sic] the acting in concert. Thus, the actions of the development of the defendant at best fulfills his lack of participation whenever he does fullfil [sic] a robbery. Whenever he does not fullfil [sic] a robbery in the second degree, assuming arguendo that the defendant is charged with that, acts of conduct warrant a lesser charge, robbery in the third degree in that the defendant, if for no other reason, fulfills the sole element of forcible taking. These elements are not fulfilled by testimony so far.

"Therefore, all the elements herein to suppress the evidence is missing and thus the identification of the defendant should be suppressed."

Nor was counsel's evident bewilderment confined to the suppression hearing. Thus, while the complainant's credibility was one of the primary questions at trial, his cross-examination of Butler was cursory and scarcely adequate considering both the importance of his testimony and the amount of impeachment material available. In fact, defendant's lawyer at times even undermined his client's claim that he was present at the scene of the crime but did not participate by, for instance, neglecting to object to prejudicial hearsay and not interrogating Butler about a possible prior inconsistent version of defendant's role. Accordingly, it is clear that, taking into account the totality of the circumstances surrounding defendant's defense, he lacked the effective assistance of counsel, a dereliction which was not, and could not be, compensated by the more professional services provided by the attorneys for his codefendants. Not only did every one of defendant's companions ultimately drop out of the jury trial, thereby leaving him as the sole surviving accused, but the interests of the various defendants were simply in conflict with each other. Defendant, after all, alleged that the other men were responsible for the subject robbery and that he was a mere bystander.

In addition, defendant contends that the court's supplemental charge to the jury was in error. The disputed instruction was delivered after the jury had already retired to deliberate and sent the following inquiry to the Judge: "Given that we believe that a deadly weapon was used, is knowledge by the defendant of the weapon necessary to find him guilty of [robbery in the first degree]". The court, in response, explained that there was no such requirement and that defendant must simply have "intentionally aided in the stealing of the property" and that "he must have known that in the forcible taking of property that a deadly weapon was being used". While defendant is correct in asserting that this charge was in error since under the Penal Law an accused is responsible only for such an offense that is compatible with his own culpable mental state (Penal Law §§ 20.00, 20.15; *see, People v La Belle,* 18 NY2d 405), his conviction would not have required reversal on this ground alone in view of his failure to raise this claim below *(People v Nuccie,* 57 NY2d 818). We have reviewed defendant's remaining argument concerning Crawford's belated willingness to testify and find it to be without merit. Concur—Sullivan, J. P., Milonas, Rosenberger, Asch and Kassal, JJ.