■ In the Matter of JUAN J., a Person Alleged to be a Juvenile Delinquent, Appellant.—Order of disposition, Family Court, New York County, entered on October 4, 1990, which adjudicated appellant a juvenile delinquent and placed him in the custody of the New York State Division for Youth, Title III, for 18 months, upon a fact-finding determination that appellant had committed acts which, if committed by an adult, would constitute the crimes of robbery in the second degree, two counts of assault in the second degree, and assault in the third degree (Michael Gage, F.C.J., at disposition; Judith Sheindlin, F.C.J., at fact-finding), affirmed, without costs.

The evidence offered by the presentment agency showed that, on August 15, 1990, Mustafa Citak and his girlfriend, Rusha Haljuici, were seated on a bench in the Christopher Street PATH station when a group of four young men, including appellant, and two young women walked past. Various

members of the group addressed remarks to the couple, including, "What are you staring at? I will kick your ass, white girl." The group walked to the end of the platform and, according to Citak, he walked in their direction with the intention of smoking a cigarette. When he neared the group, various members made further remarks and he responded with a hand gesture. Haljuici, who heard one of the group tell Citak, "I'm going to kick your ass", walked toward the group and stepped between it and Citak in an attempt to avoid a confrontation. She told the group to leave Citak alone because he did not speak English.

One of the young women immediately reached over and pulled Haljuici's hair and then she and the other young woman began to kick, punch and slap Haljuici about the face, neck and back. Citak, intervening in an attempt to protect Haljuici, slapped one of the young women in the face. At that point, the four young men began to beat Citak. Once he was on the ground, one of the young men held Citak's hands while the other three hit and kicked him. According to a fellow passenger who entered the station after the fight had begun, one of the four young men was hitting Citak with a chain that had a wallet attached to it. Citak himself testified that he was hit with a chain on his head, neck, back, and ribs. Before intervening, the other passenger saw Citak on the ground on his hands and knees. While two males punched and kicked him, a third male held his shoulders down and a fourth male helped hold him down with one hand and, with the other, removed a wallet from Citak's pocket.

After the fellow passenger intervened, the fight continued for a few moments, during which the passenger saw appellant hit Haljuici in the head, and then the group fled the station. Appellant and several of the other assailants were apprehended later that evening and identified. One was carrying a chain with a wallet attached to it.

The only claims on appeal involve the adequacy of the proof that appellant acted with the necessary mental culpability to be found guilty of acting in concert in committing robbery in the second degree and the two counts of assault in the second degree. Appellant first contends that the prosecution failed to establish that he used force upon the victim with the intent to steal and that the failure to establish such intent renders infirm the finding of his guilt of acts which, if committed by an adult, would constitute robbery in the second degree (Penal Law § 160.10 [1]) and the first count of assault in the second degree, i.e., felony assault (Penal Law § 120.05 [6]). He also

contends that the prosecution failed to demonstrate that he intended to use a dangerous instrument in the course of the assault and that, therefore, the finding that he committed acts which, if committed by an adult, would constitute the second count of assault in the second degree (Penal Law § 120.05 [2]) must also be reversed.

Upon review of appellant's contentions, and viewing the evidence in a light most favorable to the prosecution and giving it the benefit of every reasonable inference *(People v Malizia,* 62 NY2d 755, *cert denied* 469 US 932), we find that it was sufficient to establish, beyond a reasonable doubt, appellant's guilt. Moreover, upon independently reviewing the facts, we find that the finding was not against the weight of the evidence *(see, People v Bleakley,* 69 NY2d 490).

A person is liable for the conduct of another when, "acting with the mental culpability required for the commission [of the crime charged], he solicits, requests, commands, importunes, or intentionally aids such person to engage in such conduct." (Penal Law § 20.00.) In order to sustain a charge of robbery, and, in this case, the charge of felony assault, which is grounded in the robbery, the prosecution was obligated to establish that defendant shared the intent to steal, *i.e.,* "to deprive another of property or to appropriate the same to himself or to a third person" (Penal Law § 155.05 [1]) and that he shared in the use of force for the purpose of "[p]reventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking" (Penal Law § 160.00 [1]; *see, People v Chessman,* 75 AD2d 187, 193).

Appellant contends that, since he did not actually take the victim's wallet and since there was no independent evidence that the theft was planned beforehand, the fact finder was not entitled to draw the inference that he shared the intent to steal. However, the evidence clearly shows that appellant was one of the four persons who were involved in keeping the victim on the ground, either by holding him or striking him, at the point when one of them openly reached into the victim's pocket and extracted his wallet. It is impossible to suppose that the removal of the wallet, plainly observed by a bystander who was some distance away on the platform, could have somehow escaped the notice of the very persons who were helping to subdue the victim both during the taking and thereafter. Thus, this is a substantially different case from *People v De Jesus* (123 AD2d 563), relied on by the dissent. In *De Jesus,* there was no evidence that the victim's property was removed openly by one of his assailants and, in fact, the

only evidence that his money had been stolen was the fact that the victim felt it being slipped from his pocket during a fight with five men, who included the defendant in that case. The instant case, in which the theft of the wallet was committed openly, is clearly distinguishable.

Moreover, under the circumstances of this case, we reject appellant's additional contention that the fact that the confrontation appeared to begin as a fight necessarily obviates the otherwise natural inference that the three young men who helped to subdue the victim while his wallet was removed shared in the intent to steal it. In particular, we find that the fact that appellant and the others continued to hold Citak down as his wallet was stolen and then, after momentarily continuing the attack, fled the scene together, overwhelmingly supported the inference that appellant shared the necessary intent to deprive the complainant of his wallet and that, at the very least, he participated in using force for the purpose of aiding his cohort's retention of the property (see, People v Brown, 168 AD2d 564; People v Raphael, 134 AD2d 535).

Additionally, we find that the evidence clearly established that appellant shared the necessary intent to use a dangerous instrument, i.e., the chain brandished by one of the other participants, requisite to the second charge of assault in the second degree. The evidence leaves no doubt that this instrument was used upon the victim openly, and vigorously, from virtually the outset of the attack. Appellant's willing participation in the attack despite this fact was more than adequate to support the inference that he shared in the intent to use the chain (see, e.g., People v Taylor, 131 AD2d 922; People v Bosque, 78 AD2d 986, cert denied 451 US 992). Concur—Rosenberger, Ellerin and Kassal, JJ.

Murphy, P. J., and Asch, J., dissent in a memorandum by Asch, J., as follows: While I believe that the evidence before the Family Court was sufficient to sustain a verdict that respondent Juan J. committed an act which, if committed by an adult, would constitute the crime of assault in the third degree, I do not feel there was sufficient evidence for the finding of the Family Court that respondent additionally committed acts which if committed by an adult would constitute the crimes of robbery in the second degree and assault in the second degree.

Respondent Juan J. was a member of a group consisting of four males and two females who engaged in an altercation (in the early morning hours at the Christopher Street PATH

subway station) with one Mr. Mustafa Citak and his friend Ms. Rusha Haljuici.

Although there was sufficient evidence showing that the respondent took part in an assault upon both Citak and Haljuici, the evidence before the Family Court did not prove anything other than a spontaneous decision by one of the members of the group to steal Citak's wallet while the beating was taking place. It is significant that both the victim Citak and a witness, Paul Hendricks, described the incident as a melee and as confused. There was no testimony or evidence that respondent shared the intent of the person who took Citak's wallet. In fact, there is no evidence that respondent was even aware that Citak was robbed of his wallet. "The intent to commit a robbery is an indispensible ingredient of robbery" *(People v Lopez,* 58 AD2d 516). Where, as here, the respondent is charged with acting in concert with others to rob, intent must be independently established as to each participant; it cannot be imputed to all based only upon proof offered against one. *(See, People v La Belle,* 18 NY2d 405, 412.) Here, under the facts presented, there was no proof of intent by respondent to commit a robbery. "All that was shown was that while [the victims were] assaulted by appellant and his companions, [they were] robbed by an unidentified person. Clearly, appellant's robbery conviction may not rest on so deficient an evidentiary foundation" *(People v De Jesus,* 123 AD2d 563, 564).

Further, the count of second degree assault, as a violation of Penal Law § 120.05 (2) was also unproved against respondent. There was no evidence presented to the Family Court which established that respondent used any deadly weapon or dangerous instrument during the beating. The witness Paul Hendricks did not see respondent use any such instrument and, moreover, the chain attached to the wallet and with which the victim was struck, was found in the pocket of another assailant in the group. There was no showing that respondent shared any intent to use the chain prior to the assault or even knew that the co-assailant carried a chain. As there was no independent proof of intent to use a dangerous instrument, the proof was insufficient to establish assault in the second degree under that count *(see, People v La Belle,* 18 NY2d 405, 412, supra).* Finally, the count of assault in the second degree (Penal Law § 120.05 [6]) which is premised upon the commission or attempted commission of a felony during which physical injury to a person other than one of the participants occurs, must also be dismissed as to respondent, since the only

crime remaining is assault in the third degree (Penal Law § 120.00) which is a Class A misdemeanor, not a felony.

Accordingly, I would modify the order appealed from by reversing and vacating the findings as to robbery in the second degree and assault in the second degree, vacate the placement and remand for reconsideration by the Family Court.