OPINION OF THE COURT
Ira R Globerman, J.
The defendants’ motions to inspect the Grand Jury minutes in this case present a rare situation requiring a determination of whether opinion evidence by a lay witness before the Grand Jury is competent, admissible and capable of legally sustaining an indictment. The motions also raise the question of when the legal advisor to the Grand Jury, the District Attorney, is required to instruct the grand jurors about the proper evaluation of circumstantial evidence so that the integrity of the proceeding is not impaired.
I
The defendants have been indicted for the crimes of murder in the second degree (felony murder), robbery in the first degree and related counts arising out of the armed robbery of a convenience store. At the Grand Jury presentation, an eyewitness to some of the circumstances surrounding the shooting death of Benjamin Daniels testified that he saw the defendants in the company of two other men, Junior Hanley (also known as Junior Hicks) and "Billy,”[1] shortly before Benjamin Daniels was shot. He described the four men as standing on Bryant Avenue and 172nd Street "getting ready to go into the store” that was located in midblock, around the corner from the men. The witness went on to testify that after he heard Hanley say, "This is the right time for us to do this,” "Billy” and Hanley put hoods over their heads, walked around the corner and entered the store. According to the witness, defendants Harrell and Hackett remained "outside,” "looking up and down the block for the police.” Other testimony before the Grand Jury established that "Billy” and Hanley committed a gunpoint robbery after they entered the store. When Hanley and "Billy” left the store, the witness testified, Hanley *271 was grabbed by the deceased, Benjamin Daniels, at a point a short distance down the block from the store. The witness said that Hanley then reached into his pocket and shot Daniels. After the shots were fired, he testified, "all of them” fled, leaving Daniels lying on the ground.
II
An indictment must be dismissed when the evidence before the Grand Jury is not legally sufficient to establish the offense or any lesser included offense. (CPL 210.20 [1] [b].) " 'Legally sufficient evidence’ means competent evidence which, if accepted as true, would establish every element of an offense charged and the defendant’s commission thereof.” (CPL 70.10 [1].) And, an indictment is authorized only when "competent and admissible evidence * * * provides reasonable cause to believe that * * * [the defendant] committed such offense.” (CPL 190.65 [1] [b].) In this presentation, critical testimony that was introduced against the defendants is neither competent nor admissible. Absent that evidence, the case against the defendants is legally insufficient and the indictment must be dismissed.
The general evidentiary rules applied in a criminal trial normally apply equally to Grand Jury proceedings. (People v Mitchell, 82 NY2d 509 [1993].) In the absence of a Trial Court Judge presiding at a Grand Jury presentation, it is the prosecutor’s responsibility to maintain the legality and fairness of those proceedings. Thus, as legal advisor to the Grand Jury, the prosecutor must rule on the admissibility of evidence before that body. (CPL 190.30 [6].)
Opinion evidence, unless qualified for admissibility by some special rule, is not competent evidence and, thus, is inadmissible before a Grand Jury or at trial. (Richardson, Evidence § 361 [Prince 10th ed].) In the absence of some special exception, then, testimony from witnesses may consist only of observations of events or circumstances and not of opinions and conclusions drawn from those observations. It is the province of the jury alone to determine what inferences should be drawn from the facts. (People v Batashure, 75 NY2d 306, 311 [1990].) The admission of opinion evidence is not invariably fatal to an indictment or conviction. (See, e.g., People v Malphurs, 111 AD2d 266 [2d Dept 1985] [police officer’s opinion evidence that it is difficult to estimate height when a person is seated, improperly admitted at trial but *272 reversal is not warranted]; People v Elmhurst Milk & Cream Co., 116 Misc 2d 140 [Sup Ct, Kings County 1982] [despite inadmissible opinion testimony Grand Jury minutes sufficient inasmuch as there was additional legally sufficient evidence presented]; see also, People v Taylor, 181 AD2d 408 [1st Dept 1992] [improper testimony before Grand Jury regarding uncharged acts does not require dismissal of indictment].) However, where the inadmissible opinion evidence extends to the ultimate issue in a case, its admission and use is error requiring dismissal or reversal. (People v Maxwell, 116 AD2d 667 [2d Dept 1986] [witness at trial may not testify as to whether fire was incendiary in nature since this is ultimate issue in case]; People v Rivera, 131 AD2d 518 [2d Dept 1987] [same]; People v Placencia, 157 Misc 2d 397, 399 [Sup Ct, Kings County 1993] [in election fraud case, impermissible opinion statements before Grand Jury such as " 'from just looking at them, I realized that his [nominating] petitions were basically fraudulent’ ” requires dismissal of indictment]; see also, People v Dumas, 68 NY2d 729 [1986] [misdemeanor complaints held to be facially insufficient where they contain conclusory statements that defendant sold marihuana with no evidentiary facts showing basis for the conclusion].)
In the instant case, the only witness tying the defendants to the crimes was permitted to testify that when he first saw the defendants with Hanley and "Billy,” they were on the corner of Bryant Avenue and 172nd Street and the four of them were "getting ready to go into the store.” There is no explanation of how the witness knew or concluded that the four men intended to act as a group or were preparing to enter the store which was located around the corner, at least one-half block away. The witness did not testify to observed circumstances or events but rather, at best, to inferences or, at worst, to hunches or guesses, the bases for which were unexplicated before the Grand Jury. This is classically incompetent inadmissible evidence that speaks to the ultimate issues in the case, i.e., the defendants’ criminal intentions and their actions in furtherance of the robbery.
The witness was also permitted to tell the Grand Jury that while Hanley and "Billy” were in the store, the defendants remained outside "looking up and down the block for the police.” The record offers no basis for his conclusions and opinions that the defendants were waiting for Hanley and "Billy” or that they were watching out for the police. Again, this testimony does not consist of observable events or circum *273 stances, but rather of unsupported inferences that go directly to the ultimate factual issues, inferences which are the exclusive province of the Grand Jury. This testimony is critical because if the grand jurors were to have lawfully concluded that the defendants were, in fact, lookouts, an indictment for the crimes of murder and robbery could lawfully have been returned. (See, e.g., People v Bradley, 150 AD2d 592 [2d Dept 1989].) Save for the testimony that the defendants were in the company of two perpetrators, one of whom signalled the intention to commit the crime, that they were in proximity to the crime site and that they ran after the shooting, the evidence connecting the defendants to the criminal enterprise consists of the inadmissible opinion testimony of the eyewitness. In essence, the witness clothed the defendants in perpetrators’ garb by his conclusory allegations. The error was heavily underscored and compounded when, despite the significant instances of incompetent and inadmissible testimony, the prosecutor failed to provide any sort of limiting instruction or explanation as to how the Grand Jury should evaluate such evidence.
Absent the witness’s improper testimony speaking directly to the ultimate issues in this case, there was insufficient evidence to indict the defendants.[2] The only admissible evidence against these defendants was that they were in the company of Hanley and "Billy” around the corner from the store, one-half block away from it, when Hanley said to one or more of the group that "This is the right time to do this”; that the defendants remained in proximity to the store when Hanley and "Billy” committed the robbery; that they were somewhere in the area when the shooting occurred; and that, thereafter, they ran.
The defendants’ presence at the scene of the crime is insufficient to establish their guilt. (Penal Law § 20.00.) Nor, of course, can flight alone establish their guilt. (See, People v Moses, 63 NY2d 299, 308 [1984] [a defendant’s flight from the scene of a crime is weak evidence of guilt].) Furthermore, the fact that Hanley said, "This is the right time for us to do this,” in the presence of the defendants, is, at best, equivocal evidence with which to tie them to the crime inasmuch as *274 immediately after this statement was uttered, Hanley and "Billy,” not the defendants, donned the hoods and engaged in the criminal actions. Even if those words conveyed to the defendants the knowledge that a crime was about to be committed, such knowledge is not the basis for a criminal charge. (People v La Belle, 18 NY2d 405, 412 [1966]; People v Reyes, 82 AD2d 925, 926 [2d Dept 1981] ["Mere presence at the scene of a crime with knowledge of its perpetration does not render the observer accessorially liable therefor”]; People v Vazquez, 115 AD2d 626 [2d Dept 1985].)
In sum, the evidence before the Grand Jury was insufficient to support a reasonable suspicion that the defendants intended to and did participate in the robbery that led to the murder. The inference of guilt does not flow logically from the facts adduced before the Grand Jury. On the contrary, the evidence utterly fails to establish that the defendants were acting in concert with the other two individuals to commit the crimes charged. The indictment must, therefore, be dismissed. (GPL 190.65 [1] [b]; 210.20 [1] [b]; People v Deegan, 69 NY2d 976 [1987].)
III
Even if it were successfully argued that the evidence before the Grand Jury was sufficient to sustain the charges, the presentation would still be defective because of the District Attorney’s failure to furnish the Grand Jury with a circumstantial evidence charge. Of course, a Grand Jury need not be instructed with the same degree of precision or specificity as a petit jury. In fact, the District Attorney is not legally required to deliver any particular charge to the Grand Jury. It is sufficient if the District Attorney provides "the Grand Jury with enough information to enable it intelligently to decide whether a crime has been committed and to determine whether there exists legally sufficient evidence to establish the material elements of the crime.” (People v Calbud, Inc., 49 NY2d 389, 394-395 [1980].) Given the less exacting standard to which the District Attorney is held when instructing a Grand Jury, courts that have addressed the issue have generally held that the failure to provide the Grand Jury with a circumstantial evidence charge does not require dismissal of the indictment. In those cases, however, the courts have relied in large part on the fact that the evidence presented was not wholly circumstantial. (See, e.g., People v McLaurin, 196 AD2d 511 *275 [2d Dept 1993]; People v Chaudhry, 186 AD2d 48 [1st Dept 1992]; People v Morales, 183 AD2d 570 [1st Dept 1992].) Where, however, the case is entirely circumstantial, the failure to furnish a circumstantial evidence charge so impairs the integrity of the Grand Jury proceedings that dismissal is mandated. (See, e.g., People v Retamar, NYLJ, Nov. 29, 1993, at 27, col 1 [Sup Ct, Bronx County].)
As the Court of Appeals has recognized, "the Grand Jury historically has acted as a buffer between the State and its citizens, protecting the latter from unfounded and arbitrary accusations * * * When the District Attorney’s instructions to the Grand Jury are so incomplete or misleading as to substantially undermine this essential function, it may fairly be said that the integrity of that body has been impaired.” (People v Calbud, Inc., supra, at 395-396 [citations omitted].)
The presentation at issue is one of those rare situations in which incomplete instructions to the Grand Jury, specifically the failure to provide a circumstantial evidence charge, rendered the Grand Jury incapable of fulfilling its obligation of standing between the prosecutor and the accused. The evidence against these defendants, as recited above, was entirely circumstantial — there was no direct proof linking these two defendants to the crimes charged. Under the circumstances, the Grand Jury could not possibly have properly evaluated that evidence absent an instruction on circumstantial evidence. Accordingly, the failure to provide a circumstantial evidence charge so impaired the integrity of the Grand Jury proceedings that the case against these defendants must be dismissed.

. Junior Hicks’ motion to dismiss the indictment based on the same Grand Jury proceeding was denied in a separate decision. "Billy” was the subject of a separate proceeding in the Family Court.

. Accordingly, those cases which hold that inadmissible testimony does not impair the integrity of the Grand Jury proceedings as long as there is sufficient admissible evidence to support the indictment (see, e.g., People v Diaz, NYLJ, Mar. 20, 1995, at 25, col 3; People v Taylor, supra) are inapplicable here.