People v McDonald (2019 NY Slip Op 03494)





People v Mcdonald


2019 NY Slip Op 03494


Decided on May 3, 2019


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on May 3, 2019
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: CENTRA, J.P., PERADOTTO, DEJOSEPH, AND WINSLOW, JJ.


313 KA 16-01806

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
SHERRY L. MCDONALD, DEFENDANT-APPELLANT. 






DAVISON LAW OFFICE, PLLC, CANANDAIGUA (MARK C. DAVISON OF COUNSEL), FOR DEFENDANT-APPELLANT. 
SANDRA DOORLEY, DISTRICT ATTORNEY, ROCHESTER (SCOTT MYLES OF COUNSEL), FOR RESPONDENT. 


 Appeal from a judgment of the Monroe County Court (Christopher S. Ciaccio, J.), rendered July 13, 2016. The judgment convicted defendant, upon a jury verdict, of murder in the second degree. 
It is hereby ORDERED that the judgment so appealed from is unanimously reversed on the law, the indictment is dismissed, and the matter is remitted to Monroe County Court for proceedings pursuant to CPL 470.45.
Memorandum: On appeal from a judgment convicting her upon a jury verdict of murder in the second degree (Penal Law §§ 20.00, 125.25 [1]), defendant contends that the conviction is not supported by legally sufficient evidence and that the verdict is against the weight of the evidence. We agree, and we therefore reverse the judgment and dismiss the indictment.
The People's theory at trial was that the codefendant, defendant's boyfriend, shot the victim multiple times after the victim exited a bar and was walking to his vehicle, thereby killing him. The People argued that defendant drove the codefendant to the scene, picked him up after the murder, and then drove him to his residence. After a joint trial, a jury found both defendant and the codefendant guilty of murder in the second degree.
"It is well settled that, even in circumstantial evidence cases, the standard for appellate review of legal sufficiency issues is whether any valid line of reasoning and permissible inferences could lead a rational person to the conclusion reached by the fact finder on the basis of the evidence at trial, viewed in the light most favorable to the People' " (People v Hines, 97 NY2d 56, 62 [2001], rearg denied 97 NY2d 678 [2001]; see People v Rossey, 89 NY2d 970, 971-972 [1997]; People v Cabey, 85 NY2d 417, 420-421 [1995]). As relevant here, a person is guilty of murder in the second degree when, "[w]ith intent to cause the death of another person, he [or she] causes the death of such person" (Penal Law § 125.25 [1]). Defendant was convicted based solely on her liability as an accessory. A person is criminally liable for the conduct of another that constitutes an offense "when, acting with the mental culpability required for the commission thereof, he [or she] solicits, requests, commands, importunes, or intentionally aids such person to engage in such conduct" (§ 20.00; see People v Croley, 163 AD3d 1056, 1056 [3d Dept 2018]). "Intent to kill may be inferred from defendant's conduct as well as the circumstances surrounding the crime" (People v Price, 35 AD3d 1230, 1231 [4th Dept 2006], lv denied 8 NY3d 926 [2007]; see Croley, 163 AD3d at 1056). A jury is also "entitled to infer that a defendant intended the natural and probable consequences of his [or her] acts" (People v Hough, 151 AD3d 1591, 1593 [4th Dept 2017], lv denied 30 NY3d 950 [2017] [internal quotation marks omitted]). Nonetheless, "[i]t is essential that the intent . . . to kill be fairly deducible from the proof and that the proof exclude any other purpose" (People v Monaco, 14 NY2d 43, 46 [1964]).
Here, defendant contends that even if there is legally sufficient evidence to support the codefendant's conviction, the People failed to present legally sufficient evidence establishing that defendant shared the codefendant's intent to cause the victim's death. We agree. Viewing the evidence in the light most favorable to the People, the People established that defendant was observed inside a bar shortly after 1:30 a.m. on the night of the shooting staring at the victim and his girlfriend. They further established that defendant owned a silver Infiniti sedan; that a silver Infiniti was observed near the bar prior to and after the shooting; that the codefendant approached the victim on foot after the victim left the bar with his girlfriend and shot him at approximately 2:10 a.m.; that defendant and the codefendant exchanged phone calls shortly after the shooting; and that, after the shooting, the codefendant was picked up in a silver Infiniti and driven to his home, at which point two people exited the vehicle. The People also submitted evidence of defendant's consciousness of guilt, i.e., evidence that defendant lied to the police regarding her and the codefendant's whereabouts on the evening of the shooting and that, within days after the shooting, defendant obtained a new cell phone and got rid of the Infiniti.
A "defendant's presence at the scene of the crime, alone, is insufficient for a finding of criminal liability" (Cabey, 85 NY2d at 421, citing People v Sanchez, 61 NY2d 1022, 1023 [1984]; see People v Lopez, 137 AD3d 1166, 1167 [2d Dept 2016]). Indeed, evidence that a defendant was at the crime scene and even assisted the perpetrator in removing evidence of that crime is insufficient to support a defendant's conviction where the People fail to offer evidence from which the jury could rationally exclude the possibility that the defendant was without knowledge of the perpetrator's intent (see People v La Belle, 18 NY2d 405, 411-412 [1966]; see also People v Robinson, 90 AD2d 249, 251 [4th Dept 1982], affd 60 NY2d 982 [1983]). "An aider and abettor must share the intent or purpose of the principal actor, and there can be no partnership in an act where there is no community of purpose" (La Belle, 18 NY2d at 412 [internal quotation marks omitted]). We have no difficulty concluding that there is a valid line of reasoning and permissible inferences by which the jury could have found that defendant intentionally aided the codefendant after the murder, but we cannot conclude that there is legally sufficient evidence to support the inference that defendant shared the codefendant's intent to kill the victim (see People v Eldridge, 302 AD2d 934, 935 [4th Dept 2003], lv denied 99 NY2d 654 [2003]; see generally Robinson, 90 AD2d at 251). The People offered no motive for the crime (cf. People v Ficarrota, 91 NY2d 244, 249 [1997]), and the evidence indicating that defendant was staring at the victim 40 minutes before the shooting and that defendant may have dropped off the codefendant at the bar prior to the shooting was plainly insufficient to establish that defendant was aware of and shared the codefendant's intent to kill the victim (cf. Rossey, 89 NY2d at 972).
Even assuming, arguendo, that the evidence is legally sufficient, viewing the evidence in light of the elements of the crime as charged to the jury (see People v Danielson, 9 NY3d 342, 349 [2007]), we further conclude that the verdict is against the weight of the evidence (see generally People v Bleakley, 69 NY2d 490, 495 [1987]). A review of the weight of the evidence requires us to first determine whether an acquittal would not have been unreasonable (see Danielson, 9 NY3d at 348). If so, we must " weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony' " (Bleakley, 69 NY2d at 495). We conclude that an acquittal would not have been unreasonable in this case and, based on the weight of the evidence, we further conclude that the jury was not justified in finding defendant guilty beyond a reasonable doubt.
As noted above, there is evidence, through the testimony of the victim's girlfriend, that defendant was in the bar staring at the victim and his girlfriend 40 minutes prior to the shooting. However, that testimony is not corroborated by other evidence (cf. People v Ratliff, 165 AD3d 845, 845 [2d Dept 2018], lv denied 32 NY3d 1128 [2018]). Notably, the surveillance video did not show defendant ever entering or leaving the bar, and the bartender that night, who was familiar with defendant and the codefendant, did not testify that defendant was inside the bar that night. In addition, the testimony of the victim's girlfriend is inconsistent with the People's theory that defendant and the codefendant circled around the neighborhood of the bar in the Infiniti for 40 minutes before the shooting and that defendant then dropped off the codefendant near the bar at 1:55 a.m. In addition, although the People attempted throughout the trial to create an inference that defendant was always the driver of the Infiniti, the People presented evidence establishing that the codefendant was driving the car prior to the shooting. Specifically, the codefendant was identified as the person on the surveillance video who, at 1:11 a.m., parked and exited the vehicle from the driver's seat, and then spoke to someone who was not defendant [*2]before ultimately driving off. While the surveillance video does not rule out the possibility that defendant was a passenger in the vehicle at that time, no passenger can be seen in the video, there is no indication such as by way of movement or a cell phone light that a passenger was inside the vehicle, and no one else can be seen entering or exiting the vehicle despite defendant allegedly being spotted in the bar minutes later. In short, the People submitted no proof that defendant was inside the Infiniti prior to the shooting. Indeed, although defendant was the recognized owner of the vehicle, two witnesses associated the Infiniti with the codefendant and not defendant, and thus it is not reasonable to infer that defendant had exclusive control over the vehicle.
In addition, while the evidence supports the inference that the codefendant made an 11-second phone call to defendant at 2:16 a.m. and that the codefendant received a call from defendant at 2:19 a.m., the codefendant also made two other phone calls in between those times, the recipients of which are unknown, with one call lasting 43 seconds.
We thus conclude that the People failed to establish beyond a reasonable doubt that defendant shared the codefendant's intent to kill, and the verdict finding defendant guilty of murder in the second degree is against the weight of the evidence (see Croley, 163 AD3d at 1060; People v Bailey, 94 AD3d 904, 904-905 [2d Dept 2012], lv denied 19 NY3d 957 [2012]).
In light of our determination, we do not address defendant's remaining contentions.
Entered: May 3, 2019
Mark W. Bennett
Clerk of the Court