People v Marsh (2025 NY Slip Op 03874)

People v Marsh

2025 NY Slip Op 03874

Decided on June 27, 2025

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on June 27, 2025
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: LINDLEY, J.P., MONTOUR, OGDEN, NOWAK, AND KEANE, JJ.

97 KA 21-01564

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
DERRICK C. MARSH, DEFENDANT-APPELLANT. 

THE LEGAL AID BUREAU OF BUFFALO, INC., BUFFALO (BHAGYASHREE GUPTE OF COUNSEL), FOR DEFENDANT-APPELLANT.
LORI PETTIT RIEMAN, DISTRICT ATTORNEY, LITTLE VALLEY, FOR RESPONDENT. 

 Appeal from a judgment of the Cattaraugus County Court (Ronald D. Ploetz, J.), rendered July 26, 2021. The judgment convicted defendant upon a jury verdict of assault in the first degree. 
It is hereby ORDERED that the judgment so appealed from is reversed on the law, that part of defendant's omnibus motion seeking to suppress defendant's videotaped statements at the police station on January 13, 2020 is granted in its entirety, and a new trial is granted on count 2 of the indictment.
Memorandum: On appeal from a judgment convicting him following a jury verdict of assault in the first degree (Penal Law § 120.10 [1]), defendant contends, inter alia, that the conviction is not based on legally sufficient evidence and that the verdict is against the weight of the evidence. Defendant failed to preserve his challenge to the sufficiency of the evidence inasmuch as his perfunctory motion for a trial order of dismissal was not " 'specifically directed' " at the errors alleged on appeal with respect to the single count for which he was convicted (People v Gray, 86 NY2d 10, 19 [1995]; see People v Elmore, 175 AD3d 1003, 1004 [4th Dept 2019], lv denied 34 NY3d 1158 [2020]; People v Lankford, 162 AD3d 1583, 1584 [4th Dept 2018], lv denied 32 NY3d 1065 [2018]). In any event, the contention lacks merit.
Viewing the evidence in the light most favorable to the People (see People v Contes, 60 NY2d 620, 621 [1983]), we conclude that there is a valid line of reasoning and permissible inferences that would lead a rational juror to conclude that defendant acted jointly and in concert with another with the intent to cause serious physical injury and caused such injury by means of a dangerous instrument (Penal Law §§ 20.00, 120.10 [1]; see People v La Belle, 18 NY2d 405, 412 [1966]; People v McDonald, 172 AD3d 1900, 1902-1903 [4th Dept 2019]; see generally People v Bleakley, 69 NY2d 490, 495 [1987]).
Defendant was aware that another person was using a ligature to strangle the victim, and "his 'continued participation in the assault [is] sufficient to support the conclusion that he intentionally aided in the assault with a dangerous instrument' " (People v Ford, 148 AD3d 1656, 1657 [4th Dept 2017], lv denied 29 NY3d 1079 [2017]). Moreover, viewing the evidence in light of the elements of the crime of assault in the first degree as charged to the jury (see People v Danielson, 9 NY3d 342, 349 [2007]), we conclude that the verdict with respect to that crime is not against the weight of the evidence (see Bleakley, 69 NY2d at 495; see generally Ford, 148 AD3d at 1657).
Defendant further contends that County Court erred in refusing to suppress statements he made to a detective at the police station following his arrest. According to defendant, the People failed to meet their burden at the suppression hearing of establishing beyond a reasonable doubt that he was fully advised of his Miranda rights and knowingly, intelligently and voluntarily [*2]waived such rights before speaking to the detective about the crime. We agree.
As a preliminary matter, we note that, although defendant did not contend below that his statements were involuntary due to the detective's failure to advise him of all the Miranda rights, his contention is properly before us because the court, in its suppression decision, expressly decided the issue raised by defendant on this appeal (see CPL 470.05 [2]; People v Prado, 4 NY3d 725, 726 [2004], rearg denied 4 NY3d 795 [2005]). Specifically, the court determined that defendant was advised of his Miranda rights and "knowingly, intelligently, and voluntarily waived them before providing statements" to the detective. The court added that "Miranda's safeguards were satisfied here." Based on our review of the videotaped interrogation, we come to a different conclusion.
"A defendant's waiver of his Miranda rights must be knowing, voluntary, and intelligent" (People v Jin Cheng Lin, 26 NY3d 701, 725 [2016]), and it is the People's burden to establish "beyond a reasonable doubt that defendant knowingly, voluntarily and intelligently waived his Miranda rights before being questioned" (People v Lee, 224 AD3d 1372, 1373 [4th Dept 2024], lv denied 41 NY3d 984 [2024]; see People v Dunbar, 104 AD3d 198, 206 [2d Dept 2013], affd 24 NY3d 304 [2014], cert denied 575 US 1005 [2015]). "In order to meet that burden, it must be shown, inter alia, that the waiver was made with 'a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it' " (Dunbar, 104 AD3d at 206, quoting Moran v Burbine, 475 US 412, 421 [1986]).
" 'The failure to adequately advise a suspect of [their] rights as required by Miranda requires suppression of even voluntary statements' " (People v Santos, 112 AD3d 757, 758 [2d Dept 2013], lv denied 22 NY3d 1158 [2014]). "[W]hether [a] defendant's waiver was knowing and intelligent is 'essentially a factual issue that must be determined according to the circumstances of each case' . . . The People must establish that the defendant 'grasped that he or she did not have to speak to the interrogator; that any statement might be used to the subject's disadvantage; and that an attorney's assistance would be provided upon request, at any time, and before questioning is continued' " (Jin Cheng Lin, 26 NY3d at 725-726; see generally Dunbar, 24 NY3d at 313-314).
Here, defendant's interactions with the detective at the police station are captured on videotape, and the relevant facts are not in dispute. As the People concede, the detective never read the Miranda warnings to defendant, who at the time was 30 years old and had no criminal record. Instead, the detective presented defendant with a piece of paper containing Miranda warnings and, after ascertaining that defendant could "read okay," he said to defendant "read that first one there for me please." Notably, the detective did not instruct defendant to read all of the warnings, just the first one.
After handing the paper to defendant across the desk, the detective walked away and was momentarily out of the camera's view while defendant looked at the paper. Defendant can be seen and heard on the video reading the first two rights aloud to himself before saying "Ok, I get it." Immediately thereafter, defendant picked up a pen on the desk and signed the waiver form under the signature line. The two lines defendant read aloud contain 17 words ("You have the right to remain silent" and "Anything you say can be used against you in court"). The other three sentences discussing the right to counsel contain 66 words. Additionally, the form includes an 11-word preamble ("Before we ask you any questions, you must understand your rights"), which defendant did not appear to read, and a 64-word paragraph under the heading, Waiver of Rights, which defendant also did not appear to read. Thus, the rights that defendant read aloud before signing the waiver constitute 20.4% of the words in the Miranda warnings, and only 11.5% of the total words on the waiver form.
After defendant signed the form, the detective, upon returning to the desk, asked defendant whether he had read all of the rights. "Yes," defendant responded. The detective then asked defendant whether he read the Waiver of Rights portion of the form, which states, among other things, "I do not want a lawyer at this time." Defendant looked at the paper for a few seconds before stating, "I don't need a lawyer, do I?" The detective responded, "No, you — at any time you want, you can stop answering questions and, and, have an attorney, you know, if you want one." Defendant said that he did not think he would need a lawyer and proceeded to answer the detective's questions and to make incriminating statements that were used against [*3]him at trial.
As can be seen from the videotape, neither the detective nor defendant read all of the Miranda rights out loud and, while they did discuss Miranda in general, the focus of the oral interaction was about the waiver of the right to counsel and not the other rights described on the Miranda form. There is no indication that defendant actually read all of the warnings or comprehended them. Indeed, the videotape establishes that defendant looked at the form for less than five seconds before he reached for the pen to sign it. Based on our review of the video, we conclude that it is highly improbable, if not impossible, for defendant to have read to himself all of the Miranda warnings during the five seconds the piece of paper was in front of him before he signed. More to the point, the People failed to meet their burden of proving beyond a reasonable doubt that defendant was adequately apprised of his relevant constitutional rights before waiving them.
Although "[t]here is no rule, statutory or otherwise, requiring that Miranda warnings be read to a suspect" (People v Peraza, 288 AD2d 689, 690 [3d Dept 2001], lv denied 97 NY2d 707 [2002]; see People v Jeremiah, 147 AD3d 1199, 1201-1202 [3d Dept 2017], lv denied 29 NY3d 1033 [2017]; see generally United States v Sledge, 546 F2d 1120, 1122 [4th Cir 1977], cert denied 430 US 910 [1977]; People v Warren, 2 AD3d 1317, 1318 [4th Dept 2003], lv denied 1 NY3d 636 [2004]), there is no evidence in this case that defendant was actually "administered" such rights (Peraza, 288 AD2d at 690) or that such rights were "verbally outline[d]" to him (Jeremiah, 147 AD3d at 1202).
In both Sledge and Warren, the respective defendants were given a form containing the Miranda warnings and the law enforcement officials then "observed" the defendants read the form (Sledge, 546 F2d at 1122; see Warren, 2 AD3d at 1317). Here, in contrast, the detective did not observe defendant read the form, and defendant did not have the form in front of him long enough to read all of the warnings before he signed it. "We remind the Government . . . that a heavy burden rests upon it to prove that a person in custody did knowingly and intelligently waive [the] privilege against self-incrimination and [the] right to retained or appointed counsel . . . [and] the preferred practice would include both an oral recitation of the required Miranda warnings coupled with the delivery of a written explanation thereof to the accused" (Sledge, 546 F2d at 1122).
Because there are "no facts from which County Court could have rationally concluded that defendant's waiver of the right to counsel - or any of his other rights - was knowing, voluntary and intelligent" (People v Teixeira-Ingram, 199 AD3d 1240, 1242 [3d Dept 2021]), and because defendant was in custody when interrogated at the police station, it follows that his statements must be suppressed. We therefore reverse the judgment, grant that part of the omnibus motion seeking to suppress the statements made by defendant to law enforcement personnel, and grant a new trial.
In light of our determination, defendant's remaining contentions are academic.
All concur except Keane, J., who dissents and votes to affirm in the following memorandum: I respectfully dissent. I disagree with the majority that County Court erred in determining that the People met their burden of establishing beyond a reasonable doubt that defendant knowingly, voluntarily and intelligently waived his Miranda rights before being questioned (see generally People v Dunbar, 104 AD3d 198, 206 [2d Dept 2013], affd 24 NY3d 304 [2014], cert denied 575 US 1005 [2015]; People v Lee, 224 AD3d 1372, 1373 [4th Dept 2024], lv denied 41 NY3d 984 [2024]). In my view, the videotape does not establish that the People failed to meet their burden. Although the detective did not read the Miranda warnings to defendant, he nonetheless provided a written copy of them to defendant after defendant assured the detective that he could "read and write okay." Defendant demonstrated that he could read by reading aloud the first two rights set forth in the Miranda warnings form. Defendant then advised the detective, "Ok, I get it," before signing the waiver of his own accord. After defendant signed the form, the detective asked him whether he had read all of the rights. Defendant responded that he had. As if that was not enough, the detective pressed defendant further, asking him whether he read the "waiver of rights" at the bottom of the page. Defendant thereafter asked if he needed a lawyer, an appropriate question directly related to the rights set forth in the Miranda warnings.
"[W]hether [a] defendant's waiver was knowing and intelligent is 'essentially a factual issue that must be determined according to the circumstances of each case' . . . The People must establish that the defendant 'grasped that [they] did not have to speak to the interrogator; that any statement might be used to the subject's disadvantage; and that an attorney's assistance would be provided upon request, at any time, and before questioning is continued' " (People v Jin Cheng Lin, 26 NY3d 701, 725-726 [2016]; see generally People v Dunbar, 24 NY3d 304, 313-314 [2014], cert denied 575 US 1005 [2015]).
I am concerned that by focusing upon, and drawing conclusions from, the fact that defendant read aloud only the first two rights of the Miranda warnings form and then signed it, we are employing an unreliable benchmark to measure his understanding of his rights and whether the waiver thereof was voluntary. That practice may serve to undermine our independent review of the unique facts presented in each case (see Jin Cheng Lin, 26 NY3d at 725-726). Without due consideration to defendant's demonstrated ability to read and write, the detective's understated approach to the interview, and defendant's repeated assurances that he read the rights contained in the Miranda warnings form, the majority's conclusion might suggest that a waiver of Miranda rights is involuntary where a defendant elected not to spend more time reading the form or the officer did not spend enough time observing a defendant read the form. Although it would have been preferable if the detective had read the form aloud to defendant, there is nothing in this record to suggest that defendant was denied adequate time to read the Miranda warnings form or was pressured in any way to sign the waiver. No trickery or coercion of any form occurred (see generally People v Smalls, 191 AD3d 1258, 1259 [4th Dept 2021], lv denied 36 NY3d 1124 [2021]).
Indeed, the detective was so concerned about whether defendant read all of his rights that he asked defendant twice if he read them all. Here, defendant alone decided how much time he wished to devote to reviewing the Miranda warnings form before signing it, and I am not comfortable substituting our judgment for his and deciding what is reasonable or adequate. I have reviewed defendant's remaining contentions and conclude that none warrants modification or reversal of the judgment. I would therefore affirm.
Entered: June 27, 2025
Ann Dillon Flynn
Clerk of the Court